Opinion filed December 31, 2020



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00050-CV

_____

## SUSAN DAVIS VAN DYKE ET AL., Appellants

## V.

## THE NAVIGATOR GROUP ET AL., Appellees

**On Appeal from the 118th District Court**

**Martin County, Texas**

**Trial Court Cause No. 6668**

## MEMORANDUM OPINION

The genesis of the dispute in this appeal is found in a double fraction "minerals and mineral rights" reservation in a 1924 deed. In the 1924 deed, Geo. H. Mulkey conveyed certain property to G.R. White and G.W. Tom. The deed contained the following reservation:

> It is understood and agreed that one-half of one-eighth of all minerals and mineral rights in said land are reserved in grantors, Geo. H. Mulkey and Frances E. Mulkey, and are not conveyed herein.

Appellants claim to derive ownership of one-half of the minerals and mineral rights related to the property by virtue of that reservation. Appellants make that claim as heirs and assigns, through the years, of the Mulkeys. We will refer to those parties as "Appellants" or "the Mulkey Assignees."[1]

Contrary to Appellants' claim, Appellees assert that Appellants only own one-sixteenth of the minerals and mineral rights and that Appellees own the other fifteen-sixteenths of the minerals and mineral rights as heirs and assigns, through the years, of White and Tom. We will refer to those parties as "Appellees" or "the White Assignees."[2]

The parties filed various motions for summary judgment. By way of a summary judgment order, the trial court agreed with the White Assignees and

---

[1]Appellants are Susan Davis Van Dyke; Stephen L. Davis; Sheryl Ann Huttner f/k/a Ann Mulkey Bell; Kay Elaine Keys; Jill Marie Stuckert, a/k/a Jill Marie Walker; George Dan Mulkey and Thomas J. Mulkey, Trustees of the Mulkey Family Mineral Trust; Arthur B. Davis; Boyd Enterprises, Inc.; The Huffington Foundation; Bishop-Windham Family Limited Partnership; Terry S. Key, Trustee of the Terry S. Key Non-Exempt Trust; Roger A. Key, Trustee of the Roger A. Key Non-Exempt Trust; Pam Stribling and John V. Price as Heirs and Successors of Interest to Noble H. Price; Preston Bridgewater, Jr.; James G. McClellan, Independent Executor of the Estate of Hayden J. Upchurch, Deceased; Deborah L. Alexander, Trustee of the DLA Child's Trust; Amanda Kay Livingston, Trustee of the ADK Child's Trust; Culley Ingram, Trustee of the CI Grandchild's Trust; Kerry Kantman, Trustee of the KK Grandchild's Trust; McKenzie Ciliberto, Trustee of the MC Grandchild's Trust; Ryedale, LLC; Jane R. Lancaster; Raymond James Trust, N.A., Trustees of the Edith Elizabeth Brasher 1986 Management Trust; William Marsh Rice University; Howard W. Key, Trustee of the Howard W. Key Non-Exempt Trust; Charles E. Key, Trustee of the Charles E. Key Non-Exempt Trust; Deutsche Bank Trust Company, N.A. and Irving Sitnick, Trustees of the Lucy G. Moses 12/24/58 Trust; Deutsche Bank Trust Company, N.A., Trustee of the Henry & Lucy Moses Foundation Trusts; Deutsche Bank Trust Company, N.A. and William H. Hernstadt, Trustees of the William H. Hernstadt Estate Trust; Deutsche Bank Trust Company, N.A., Trustee of the William L. Hernstadt 1937 Trust; Dorchester Minerals, L.P.; PXP Producing Company, LLC; and Freeport McMoRan Oil & Gas, LLC.

[2]Appellees are The Ninety-Six Corporation; Keith M. Skaar; Blake Wood; Blake Oil & Gas Corporation; Jack E. Blake, Jr.; Rick Ybarra, as Trustee of the Logan Lee Blake Trust; Betty Lou Angelo; Ernest Angelo, Jr.; S. Javaid Anwar; Brendan J. Fikes Family Partnership, Ltd.; Craig, Ltd.; Michael J. Daniel; Dingus Investments, Inc.; Discovery Exploration Partnership; MTX Interests LP; Kennedy Minerals, Ltd. (collectively, The Navigator Group); John W. Daniels and wife, Wilma F. Daniels; JPMorgan Chase, N.A., as Trustee of the G.R. White Charitable Trust and as Trustee of the Joy Lina White Trust (Chase); Loretta Mills; Susan Doherty; Linda Waterman Schrader; Donna Waterman Hickey; Bruce Earl Waterman; Dave Michael McCullar; Fredrick Bartlett Wulff Sr.; Richard W. Winters Jr.; and Kathleen M. Winters.

declared, among other things, that the 1924 deed was unambiguous and that it "reserved 1/16th of the mineral and mineral rights to George H. and Frances E. Mulkey (1/2 of 1/8) and conveyed 15/16th of the minerals and mineral rights to G.R. White and G.W. Tom of the land conveyed." The trial court severed all claims not disposed of by its summary judgment order. Those claims relate mainly to dependent but separate royalty issues, attorney's fees, and costs and are not issues in this appeal. We affirm.

We will review the trial court's construction of the deed in this case de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When an appellate court reviews a traditional summary judgment, it takes as true evidence favorable to the nonmovant. *Id.* A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The nonmovant is not required to file a response to defeat a traditional motion for summary judgment; however, once the movant establishes a right to judgment as a matter of law, the nonmovant must come forward with evidence or law that precludes summary judgment. *Clear Creek*, 589 S.W.2d at 678–79.

When, as here, the parties file cross-motions for summary judgment and the trial court grants one party's motion and denies the other's, we review the summary judgment evidence presented by both parties and determine all the issues presented. *Valence Operating Co.*, 164 S.W.3d at 661. If any theory advanced in a motion for summary judgment supports the trial court's grant of summary judgment, we will affirm the judgment. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If we determine that the trial court erred, then we render the judgment that the trial court should have rendered. *Valence Operating Co.*, 164 S.W.3d at 661.

The Mulkey Assignees assert claims under the estate misconception theory and the presumed grant doctrine; they also rely on various affirmative defenses. We will first discuss the Mulkey Assignees' argument under the estate misconception theory.

In their fifth issue on appeal, the Mulkey Assignees maintain that the trial court erred when it entered its summary judgment order on ownership of the minerals and mineral rights because the trial court failed to construe the deed "in light of the 'estate misconception' prevalent at the time" that the grantors executed the deed. The Mulkey Assignees claim that, when the reservation is construed "in light of" the estate misconception theory, the effect of the reservation is that they own one-half of the minerals and mineral rights. To the contrary, the White Assignees maintain that the reservation in the 1924 deed is unambiguous, that the deed contains no conflicting provisions, and that the deed plainly describes the interest reserved as a "fraction of a fraction."

We agree with the White Assignees that the reservation is unambiguous, that the deed contains no conflicting provisions, and that the interest reserved is stated in the deed as being "one-half of one-eighth of all minerals and mineral rights."

When we interpret an unambiguous deed, our primary goal is to ascertain the parties' intent as expressed in the instrument. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). Because objective intent controls, our focus is on the words that the parties chose to use to memorialize their agreement, not on their subjective intent. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018); *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016). Although surrounding circumstances may inform meaning, we may not use surrounding facts and circumstances to "make the language say what it unambiguously does not say or to show that the parties probably meant, or could have meant, something other than what their agreement stated."

4

*URI, Inc.*, 543 S.W.3d at 757 (footnote and internal quotation marks omitted). Our focus is on the words that are contained within the four corners of the deed.

Here, the Mulkey Assignees argue that the estate misconception theory is a "key surrounding circumstance that, when taken into account, renders ambiguous the 1924 Deed's use of a double fraction" in the mineral reservation. We disagree that the application of the estate misconception theory as an aid to construction creates an ambiguity. Evidence of circumstances can be used to inform the language in a contract, but such evidence may not be used to create an ambiguity. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015).

There are five severable rights connected with a mineral estate: "1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." *Hysaw*, 483 S.W.3d at 9 (quoting *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995)). A typical oil and gas lease in Texas "'conveys the mineral estate (less those portions expressly reserved, such as royalty) as a determinable fee,' with the possibility of reverter as a future interest." *Id.* (quoting *Luckel v. White*, 819 S.W.2d 459, 464 (Tex. 1991)).

The estate misconception theory refers to a once-pervasive misunderstanding that, if an owner executed a mineral lease, he retained only one-eighth of the minerals rather than a fee simple determinable with the possibility of reverter in the whole. *Hysaw*, 483 S.W.3d at 10; *WTX Fund, LLC v. Brown*, 595 S.W.3d 285, 302 (Tex. App.—El Paso 2020, pet. denied). Royalty became standardized at one-eighth of production in the 1920s and 1930s. *Graham v. Prochaska*, 429 S.W.3d 650, 657 (Tex. App.—San Antonio 2013, pet. denied) (citing *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 459 (Tex. 1998) (plurality op.)). In fact, the Texas Supreme Court has taken judicial notice that "the usual royalty provided in mineral leases [during that era] is one-eighth." *Garrett v. Dils Co.*, 299 S.W.2d 904,

5

907 (Tex. 1957). As is apparent, it was during that era that the Mulkeys executed the deed in this case.

The application of the estate misconception theory is not new to oil and gas jurisprudence in the State of Texas. Rather, we believe that what would be new to oil and gas jurisprudence in the State of Texas would be to apply the theory to construe a reservation in which clear language is employed and in which there is an absence of contradictory fractions or terms. The cases upon which the Mulkey Assignees rely contain such contradictory fractions and terms as to the interests under review in those cases. The issue in those cases was basically whether the interests in question were fixed royalty interests or floating royalty interests. A fixed or fractional royalty interest is constant and is not tied to the amount of royalty provided for in a particular lease. A fraction of royalty interest is also known as a floating royalty interest because it "varies depending on the royalty in the oil and gas lease in effect and is calculated by multiplying the fraction in the royalty reservation by the royalty in the lease." *U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 152 (Tex. 2018).

In *Luckel*, the court dealt with a 1935 mineral deed in which differing fractions were used. *Luckel*, 819 S.W.2d at 460–61. The property was subject to an oil and gas lease when the mineral deed was executed. *Id.* at 461. The court examined the terms contained within the deed and harmonized the conflicting terms within the instrument to arrive at its decision. *Id.* at 464–65.

Likewise, in *Concord Oil*, the court was faced with conflicting fractional provisions in a 1937 mineral deed. 966 S.W.2d at 453. The deed was subject to a producing oil and gas lease. *Id.* As in *Luckel*, the court looked to the terms within the four corners of the deed and harmonized the conflicting terms. *Id.* at 457 (citing *Luckel*, 819 S.W.2d at 462). The court expressly stated that its decision was not based upon the estate misconception theory. *Id.* at 460.

6

In *U.S. Shale*, the court was asked to determine whether a nonparticipating royalty interest reservation reserved a fixed royalty or a floating royalty. *U.S. Shale*, 551 S.W.3d at 150. There, the grantors reserved "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals . . . the same being equal to one-sixteenth (1/16) of the production." *Id.* There were no other provisions in the deed that related to the reservation. *Id.* at 153. The court noted its obligation to harmonize that language. *Id.* In so doing, the court held that the first clause in the reservation reflected the parties' intent that the reserved royalty was dependent upon "the royalty rate that was in effect at any given time." *Id.* The court acknowledged that the typical royalty in effect at the time of the deed was one-eighth but pointed out that there was no evidence in the record that a lease was in effect at the time that the deed was executed and that "[t]he parties could not have intended to tie the reservation to something that simply did not exist." *Id.* The court reiterated that "the possibility that the parties were operating under the assumption that future royalties would remain 1/8 will not alter clear and unambiguous language that can otherwise be harmonized." *Id.* at 155 (quoting *Hysaw*, 483 S.W.3d at 10).

In *Hysaw*, the testatrix's will contained seemingly inconsistent provisions. The court holistically harmonized those provisions in its effort to determine the testatrix's intent. *Hysaw*, 483 S.W.3d at 14. The court recognized that "the estate-misconception theory and the historical use of 1/8 as the standard royalty may inform the meaning of fractions stated in multiples of 1/8, but these considerations are not alone dispositive." *Id.* at 13.

A multiple fraction reservation was also under review in *Graham*. *Graham*, 429 S.W.3d at 653. Although the court applied the estate misconception theory, the deed in the case before the court contained inconsistent terms and conditions relative to the extent of the estate reserved. *Id.* at 662.

7

We find the reasoning in *Hudspeth v. Berry* to be instructive. No. 2-09-225-CV, 2010 WL 2813408, at *4 (Tex. App.—Fort Worth July 15, 2010, no pet.) (mem. op.). The court considered whether a reservation in a 1943 deed was a fractional royalty interest or a fraction of royalty interest. *Id.* at *2. The court referenced *Luckel* and *Concord* and noted that in each of those cases there were conflicting fractions. *Id.* at *3 (citing *Concord Oil*, 966 S.W.2d at 454; *Luckel*, 819 S.W.2d at 459). There were no conflicting fractions in *Hudspeth*. *Id.* at *4. Because there were no conflicting fractions in the reservation and because the plain language of the deed was unambiguous, the court held that the interest was a fractional royalty interest. *Id.*

In the case now before us, there are no conflicting provisions to harmonize. Courts do not favor reservations by implication; reservations must be accomplished by clear language. *Graham*, 429 S.W.3d at 655. Here, the language in the deed is clear: the reservation was one-half of one-eighth of the minerals and mineral rights. There was no other language employed to describe the reservation.

We also note that the estate misconception theory, as relied upon by the Mulkey Assignees, is built upon the principle that mineral owners in the era in which this deed was executed assumed that, after they had executed an oil and gas lease, they retained only a one-eighth interest in the minerals. The Mulkeys could not have been operating under the estate misconception theory because, at the time of the deed, they owned all the attributes of the mineral estate; there was no lease of the minerals and there had been no conveyance of any part of the bundle of sticks that make up mineral and mineral rights ownership—the Mulkeys owned it all. Although, unlike this case, *Graham* did involve conflicting fractions, the court there stated that, as a general rule, courts construe simple reservations, such as a fraction of one-eighth, or a variation thereof, as a fixed royalty interest, the extent of which is calculated simply by multiplying the fractions. *Id.* at 658. We see no reason why

8

that same principle should not apply to situations like this when all the minerals and mineral rights are involved, not just royalty interests.

The 1924 deed is unambiguous and contains no inconsistencies for us to harmonize. We hold that, by the plain language of the reservation, the Mulkeys reserved a one-sixteenth interest in the minerals and mineral rights and conveyed the remaining fifteen-sixteenths to White and Tom. We overrule the Mulkey Assignees' fifth issue on appeal.

Alternatively, in their sixth issue on appeal, the Mulkey Assignees argue that the trial court erred when it entered its summary judgment order on ownership of the minerals and mineral rights because the trial court failed "to interpret the 1924 Deed in accordance with the presumed grant doctrine." They claim that their ownership of one-half of the minerals is established under the presumed grant doctrine or, at the very least, that a fact issue exists under the presumed grant doctrine.

The doctrine of presumed lost deed or grant operates as a common law form of adverse possession and can establish title by circumstantial evidence. *Conley v. Comstock Oil & Gas, LP*, 356 S.W.3d 755, 765 (Tex. App.—Beaumont 2011, no pet.). The object of the presumed grant theory is to settle titles in situations where it was understood that property belonged to one who claimed the land for a long time but did not have complete record title. *Id.* (citing *Purnell v. Gulihur*, 339 S.W.2d 86, 92 (Tex. App.—El Paso 1960, writ ref'd n.r.e.)). To establish title by this doctrine, the evidence must show (1) a long asserted and open claim, adverse to that of the apparent owner; (2) nonclaim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim. *Adams v. Slattery*, 295 S.W.2d 859, 868 (Tex. 1956).

If these elements are established, the law permits an inference that the apparent owner has parted with his or her title. *Id.* Generally, the presumption of a grant of title is a question of fact and may only be established as a matter of law

9

"under circumstances where the deeds are ancient and the evidence is undisputed." *Conley*, 356 S.W.3d at 765 (citing *Howland v. Hough*, 570 S.W.2d 876, 879–80 (Tex. 1978)). We must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the Mulkey Assignees' claim of a presumed grant.

The Mulkey Assignees moved for summary judgment on the ground that, for decades, predecessors to the White Assignees and the Mulkey Assignees have acted as equal owners of the minerals and that this establishes their ownership of one-half of the minerals as a matter of law by operation of the presumed grant doctrine. Relying on a series of conveyances, leases, ratifications, division orders, contracts, probate inventories, stipulations, and other documents to support their claim, the Mulkey Assignees submit that application of the presumed grant doctrine explains "why the White Assignees and their predecessors never asserted more than 1/2 ownership of minerals in the Subject Property and why the Mulkey Assignees and their predecessors consistently asserted 1/2 ownership of minerals." Accordingly, the Mulkey Assignees urge us to presume a conveyance of a seven-sixteenths mineral interest from White and Tom back to the Mulkeys following the 1924 deed.

The White Assignees argue that the presumed grant doctrine cannot apply in this case. They assert that the Mulkey Assignees' reliance on the presumed grant doctrine is misplaced because the Mulkey Assignees' claim is not based on a gap or missing link in the chain of title that would necessitate a presumed grant but, rather, solely on the Mulkey Assignees' mistaken interpretation of the unambiguous 1924 deed. We agree.

Although the existence of a chain-of-title gap is not an express element, courts have typically applied the presumed grant doctrine in cases where a party's lack of complete record title to land it has claimed for a long time is due to a gap in the chain of title. *See, e.g.*, *Howland*, 570 S.W.2d at 878 (grant presumed where plaintiff's

10

chain of title to a tract of land showed continuous record conveyances except for a gap from 1845 to 1878); *Adams*, 295 S.W.2d at 871; *Seddon v. Harrison*, 367 S.W.2d 888, 891 (Tex. App.—Houston 1963, writ ref'd n.r.e.) (grant could not be presumed where there was no missing link in appellants' chain of title to indicate from whom appellants could have derived title to the lot under a presumed grant). The Mulkey Assignees argue that it is not necessary for them to show that there is a missing link in their chain of title as a prerequisite for the application of the presumed grant doctrine.

Indeed, in *Conley*, a well operator lessee established title to mineral interests by a presumed grant in a trespass to try title action. *Conley*, 356 S.W.3d at 766. That case arose out of a dispute over the location of a surveyed tract of land and the ownership of minerals being produced by three wells operated by Comstock under oil and gas leases granted by various landowner lessors. *Id.* at 758–59. In their suit to try title, appellants claimed ownership of minerals that had allegedly been severed from the surface estate of the surveyed land and maintained that Comstock's three wells on tracts claimed by the landowners were, in fact, within the boundaries of the survey relied upon by appellants for their source of title. *Id.* at 759. That survey, filed in 1835, predated the surveys Comstock and the landowners relied upon for their own sources of title. *Id.* at 765.

Comstock obtained summary judgment under the presumed grant doctrine based on "the long acquiescence" of appellants and their predecessors in Comstock and the landowners' possession of the land and minerals subject to the surveys. *Id.* at 764. Because neither party claimed ownership under the same chain of title, there was no gap or missing link present. *See id.* at 765. However, the court upheld the summary judgment on the ground that Comstock and the landowners established superior title as a matter of law by presumed grant. *Id.* at 765–66 (holding that acquiescence was established as a matter of law where the surveys involved were

11

"ancient"; a subsequent document archived in the General Land Office suggested that the map and field notes on file incorrectly represented the surveyed land; and it was undisputed that, since 1835, no effort was made to assert ownership under that chain of title over the land at issue in appellants' trespass to try title suit against Comstock and the landowners).

Although the Mulkey Assignees maintain that a gap in the chain of title is irrelevant to application of the doctrine, they assert that a 1946 letter from Ethel Mulkey Stuckert to H. T. Mulkey "provides evidence that the Mulkey Family entered into a contract with the White Family whereby the Mulkey Family would receive half of the mineral rights in the Mulkey Ranch" and would satisfy any such requirement. They additionally point to "the parties' mutual understanding of their respective interests for over 90 years" as evidence of a "'missing' 7/16 interest conveyed back to the Mulkeys" by the White Assignees to show the existence of a "gap in interest" rather than a gap in the chain of title.

However, even if we agreed with the Mulkey Assignees that the existence of a gap is not a prerequisite to the establishment of their claim under the presumed grant theory, we cannot find that they are entitled to a presumed grant based on the facts in this case. It is undisputed that, in the 1924 deed, the Mulkeys conveyed real property to White and Tom and retained a fractional interest only in the minerals and mineral rights in the subject property. Unlike in *Conley*, the Mulkey Assignees' claims to the mineral interest at issue here are not made in conjunction with a claim of superior right to the land on which the minerals are being produced. The parties do not dispute title to the property itself; nor do they dispute joint ownership in the minerals and mineral rights. Rather, the Mulkey Assignees seek to use the presumed grant doctrine to establish the quantum of that ownership interest in the minerals and mineral rights. The Mulkey Assignees' ownership interest, however, is already

12

established under the terms of the 1924 deed, and the presumed grant doctrine may not be used to reinterpret and therefore alter its unambiguous terms.

Because the presumed grant doctrine cannot operate to change the quantum of interest as expressed in the very deed relied upon by the Mulkey Assignees for their source of title, we hold that the Mulkey Assignees failed to establish ownership of one-half of the minerals as a matter of law and that there is no genuine issue of material fact as to their claim of a presumed grant. We overrule the Mulkey Assignees' sixth issue on appeal.

Accordingly, the trial court did not err when it granted the White Assignees' motion for partial summary judgment on the construction of the 1924 deed or when it denied the Mulkey Assignees' own motion for partial summary judgment. We overrule the Mulkey Assignees' first and fourth issues on appeal.

In their third issue on appeal, the Mulkey Assignees challenge the trial court's ruling on the White Assignees' "Motion for Summary Judgment for Legal Title of Undivided Mineral Interest, Royalty Interest, and Possibility of Reverter." The trial court granted the White Assignees' motion based on its ruling that the 1924 deed unambiguously reserved one-sixteenth of the minerals and mineral rights in the grantors. Because we have held that the deed was unambiguous and that the Mulkey Assignees were not entitled to a presumed grant as a matter of law, we overrule the Mulkey Assignees' third issue on appeal.

In their seventh issue on appeal, the Mulkey Assignees argue that the "White Assignees' summary judgment" must be reversed because (1) the White Assignees did not move for summary judgment on the Mulkey Assignees' affirmative defenses of equitable estoppel and (2) there was a genuine issue of material fact as to those equitable estoppel defenses.

The White Assignees filed a motion for partial summary judgment on the construction of the 1924 deed and requested that the trial court declare that the

Mulkey Assignees' predecessors-in-interest reserved a one-sixteenth interest in the mineral estate and conveyed a fifteen-sixteenth interest in the mineral estate to the White Assignees' predecessors-in-interest. As relevant to this issue, the Mulkey Assignees asserted in their response to the motion for partial summary judgment that the White Assignees were not entitled to summary judgment because there were genuine issues of material fact on each element of the Mulkey Assignees' affirmative defenses of "estoppel by deed" and "judicial estoppel."

As to the affirmative defense of estoppel by deed, the Mulkey Assignees contended that the recitals of ownership in certain deeds in the White Assignees' chain of title that were executed in 1959 precluded a claim that the 1924 deed conveyed more than a one-half interest in the mineral estate. In support of their affirmative defense of judicial estoppel, the Mulkey Assignees asserted that sworn inventories filed in the 1965 probate proceedings of the estates of Victoria L. White and G.R. White contained statements that Victoria and G.R. owned a one-fourth interest in the mineral estate; that, in 1959, G.R. conveyed a one-fourth interest in the mineral estate to other individuals; that those conveyances combined with the one-fourth interest "sworn to" in the probate proceedings comprised the one-half interest in the mineral estate that was conveyed in the 1924 deed; and that the White Assignees could not take a position in this lawsuit "that is inconsistent with the interest sworn to in these 1965 probate proceedings."

The Mulkey Assignees also filed a competing motion for partial summary judgment in which they requested that the trial court (1) declare, based on the doctrine of presumed grant or lost deed or on the affirmative defenses of estoppel by deed, judicial estoppel, or waiver, that the Mulkey Assignees' predecessors-in-interest reserved a one-half interest in the mineral estate or (2) find that the Mulkey Assignees had acquired superior title to a one-half interest in the mineral estate based on the doctrine of presumed grant or lost deed or on adverse possession. As relevant

14

to this issue, the Mulkey Assignees argued that they had conclusively established (1) the affirmative defense of estoppel by deed based on the recitals in the 1959 deeds and (2) the affirmative defense of judicial estoppel based on the statements in the sworn inventories filed in the 1965 probate proceedings.

The White Assignees filed a combined traditional and no-evidence motion for summary judgment on the Mulkey Assignees' affirmative defenses. The White Assignees noted that the Mulkey Assignees had asserted "affirmative claims/defenses" that included "[e]stoppel – equitable and judicial." However, for the estoppel defenses, the White Assignees specifically moved for summary judgment only on the defenses of estoppel by deed and judicial estoppel.

The Mulkey Assignees filed an amended response to the White Assignees' motion for partial summary judgment for construction of the 1924 deed and a response to the White Assignees' combined motion for traditional and no-evidence motion for summary judgment on the Mulkey Assignees' affirmative defenses. The Mulkey Assignees again argued that there were genuine issues of material fact as to the affirmative defense of estoppel by deed based on the recitals in the 1959 deeds and as to the affirmative defense of judicial estoppel based on the statements in the sworn inventories in the 1965 probate proceedings.

The trial court (1) granted the White Assignees' motion for partial summary judgment and declared that the 1924 deed was unambiguous and reserved a one-sixteenth interest in the mineral estate to the Mulkey Assignees' predecessors-in-interest; (2) denied the Mulkey Assignees' motion for partial summary judgment on the construction of the 1924 deed; and (3) as relevant to this issue on appeal, granted the White Assignees' no-evidence motion for summary judgment with respect to the Mulkey Assignees' "affirmative claims and/or defenses" based on "estoppel (both equitable and judicial)."

15

As noted, the White Assignees did not move for a no-evidence summary judgment on the Mulkey Assignees' equitable estoppel affirmative defenses. Therefore, when it granted summary judgment on those defenses, the trial court erroneously granted more relief than requested by the White Assignees. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (noting that, "if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted," the judgment is erroneous). However, unless this error probably caused the rendition of an improper judgment or probably prevented the Mulkey Assignees from properly presenting the case on appeal, it does not require the reversal of the "White Assignees' summary judgment." *See* TEX. R. APP. P. 44.1(a); *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam).

"To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense." *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Clear Creek*, 589 S.W.2d at 678 ("Pleadings do not constitute summary judgment proof."). Rather, "the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those [pleas and affirmative defenses] set out in rules 93 and 94." *Clear Creek*, 589 S.W.2d at 678; *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). "'[I]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal' of a summary judgment." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (quoting TEX. R. CIV. P. 166a(c)); *see also Clear Creek*, 589 S.W.2d at 679 (holding that the non-movant must, "in a written answer or response to the motion, expressly present to the trial court those issues that would

16

defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal").

The core issue in this appeal is whether the trial court properly granted summary judgment that, through the 1924 deed, the Mulkey Assignees' predecessors-in-interest reserved only a one-sixteenth interest in the mineral estate. In their response to the White Assignees' motion for partial summary judgment as to the construction of the 1924 deed, the Mulkey Assignees did not argue that there were genuine issues of material fact as to their affirmative defenses of equitable estoppel that precluded summary judgment in favor of the White Assignees. Similarly, in their competing motion for partial summary judgment on the construction of the 1924 deed, the Mulkey Assignees did not argue that they were entitled to summary judgment based on the affirmative defenses of equitable estoppel. Therefore, we may not reverse the trial court's grant of the White Assignees' motion for partial summary judgment as to the construction of the 1924 deed based on the affirmative defenses of equitable estoppel. *See* TEX. R. CIV. P. 166a(c); *Parker*, 514 S.W.3d at 224; *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 351 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (holding that the appellate court could not consider affirmative defense of equitable estoppel as grounds for reversal of the summary judgment because, in response to motion for summary judgment, appellants "made no argument and presented no evidence that their equitable estoppel affirmative defense precluded summary judgment").

Because we may not reverse the summary judgment in favor of the White Assignees on the construction of the 1924 deed based on the Mulkey Assignees' equitable estoppel defenses, any error by the trial court when it granted the White Assignees' no-evidence summary judgment on those defenses did not cause the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *G&H Towing*, 347 S.W.3d at 298; *Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*,

No. 04-18-00324-CV, 2020 WL 1443561, at *3 (Tex. App.—San Antonio Mar. 25, 2020, pet. denied) (mem. op.) (holding that the trial court's error when it granted the appellee's no-evidence motion for summary judgment on the appellant's "affirmative defense" that the appellee failed to perform all conditions precedent was harmless because it did not cause the rendition of an improper judgment). We overrule the Mulkey Assignees' seventh issue.

Therefore, in light of our holdings on the Mulkey Assignees' claims under the estate misconception theory and the presumed grant doctrine, we hold that the trial court did not err when it granted the White Assignees' no-evidence summary judgment. We overrule the Mulkey Assignees' second issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


December 31, 2020

Panel consists of: Bailey, C.J.,
and Wright, S.C.J.[3]

Willson, J., and Trotter, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.