# IN THE SUPREME COURT OF TEXAS

════════════

No. 17-0111

════════════

U.S. SHALE ENERGY II, L.L.C., RAYMOND B. ROUSH, RUTHIE ROUSH DODGE, AND DAVID E. ROUSH, PETITIONERS,

v.

LABORDE PROPERTIES, L.P., AND LABORDE MANAGEMENT, L.L.C., RESPONDENTS

════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════

JUSTICE BOYD, joined by JUSTICE JOHNSON and JUSTICE BLACKLOCK, dissenting.

The Court holds that the deed at issue reserved a "floating" interest of 1/2 of whatever royalty might one day be paid on minerals the property produces, rather than a "fixed" interest of 1/2 of the then-standard 1/8 royalty. Yet the deed expressly and unambiguously states the grantors' intent to reserve a royalty equal to "1/16 of production." And nothing in the deed indicates that the grantors intended that amount to change if a future lease provided a royalty other than the then-standard 1/8 royalty. Because I agree with the court of appeals that the deed reserved a fixed 1/16 royalty interest, I respectfully dissent.

We recently addressed a similar fixed-or-floating-royalty issue in *Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016). Rejecting "mechanical rules of construction that offer certainty at the expense of effectuating intent," we "reaffirm[ed] our commitment to a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument." *Id.* at 13, 16. Because

the parties' intent as expressed within the document must control, we recognized that a "[v]ariety of outcome should be expected," even among documents that contain similar words and phrases. *Id.* at 13.

The Court found it "plausible" to read the *Hysaw* deed's descriptive language as defining a fixed royalty interest, but it concluded that "other language in the will and the overall structure of the royalty devise confirms [the testator's] intent to . . . legate a floating 1/3 royalty." *Id.* at 15.[1] Similarly, courts have found an intent to create a floating royalty in "other language" like a minimum-royalty clause[2] or a reference to "any and all" royalties in future leases.[3] The deed at issue here, however, contains no such "other language." As the Court agrees, *ante* at ___, the *only* indication of the grantors' intent in this deed is a single sentence describing the reserved interest using two connected clauses:

---

[1] *See also, e.g.*, *Medina Interests, Ltd. v. Trial*, 469 S.W.3d 619, 624–25 (Tex. App.—San Antonio 2015, pet. denied) (concluding that although language describing the interest "bears some similarity to language that has been interpreted as stating a fixed royalty," the deed conveyed a floating royalty because subsequent "paragraphs repeat three times the agreement that the royalties will be pooled and shared equally among the six grantors and the two grantees").

[2] *See, e.g.*, *Coghill v. Griffith*, 358 S.W.3d 834, 839–40 (Tex. App.—Tyler 2012, pet. denied) (holding that language requiring future leases to "provide for *at least* . . . the usual one-eighth" royalty indicates that grantor "contemplate[d] the possibility of a future lease containing a larger royalty" and thus intended to create a floating interest) (emphasis added); *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493–96 (Tex. App.—Fort Worth 2008, pet. denied) (finding intent to convey a floating interest based on language requiring that any future lease "provide for Royalty of *not less than* one-eighth (1/8)" and that grantee shall receive "*not less than* one-sixteenth (1/16) portion (being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty) of the entire gross production"); *Garza v. Prolithic Energy Co.*, 195 S.W.3d 137, 146 (Tex. App.—San Antonio 2006, pet. denied) (holding language that "restricts the ability of the grantor to enter into a future lease that provides for less than a one-eighth royalty . . . contemplates the possibility of a future lease containing a larger royalty," so "if the grantor enters into a future lease with a royalty that is larger than the 'usual one-eighth,' the grantee would be entitled to 15/32nds of the larger royalty interest").

[3] *See, e.g.*, *Luckel v. White*, 819 S.W.2d 459, 464–65 (Tex. 1991) (finding intent to create floating royalty interest based on language providing that grantee would receive "one-fourth of *any and all royalties reserved under*" any future leases) (emphasis added); *Leal v. Cuanto Antes Mejor LLC*, No. 04-14-00694-CV, 2015 WL 3999034, at *3–4 (Tex. App.—San Antonio, July 1, 2015, no pet.) (finding intent to create floating interest based on language describing interest as an "*undivided one-fourth (1/4) interest in and to all of the royalty paid on the production*" and other language referring to the interest as an "*interest in and to any royalty*").

2

(1) "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals,"

(2) "the same being equal to one-sixteenth (1/16) of the production."

Reading these two clauses together, I begin with the obvious conclusion: When the Bryans executed this deed in 1951, they believed they were reserving a royalty interest equal to 1/2 of a 1/8 royalty. The second clause could not state this more plainly: they expressly reserved an interest "being equal to one-sixteenth (1/16) of the production." And although no lease existed at that time, the first clause fits perfectly with the intent expressed in the second clause because a 1/8 royalty was then the standard royalty. As the Court explains, the circumstances surrounding the deed's execution, which "inform, rather than vary from or contradict, the [instrument's] text," confirm that the usual and standard royalty in 1951 was 1/8 of production. *Ante* at ___ (quoting *URI, Inc. v. Kleberg Cty.*, ___ S.W.3d ___, ___ (Tex. 2018)).[4]

The Court, however, concludes that the first clause, "[r]ead independently, . . . reserves a floating royalty interest equal to one-half of the royalty contained in [any] oil and gas lease in effect." *Ante* at ___. This conclusion serves as the *sole* foundation beneath all the Court's analysis regarding the deed's language, structure, and grammar. According to the Court, because the first clause, "read independently, reserves a floating interest," it conflicts with the second clause, thus requiring that we "harmonize" the two. *Ante* at ___. I disagree with the Court's conclusion because I disagree with its sole foundation, for two related reasons.

---

[4] *See also Hysaw*, 483 S.W.3d at 9 (describing the 1/8 royalty rate as "so pervasive that, for decades, courts took judicial notice of it as the standard and customary royalty"); *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957) ("The court takes judicial knowledge of the fact that the usual royalty provided in mineral leases is one-eighth."); *State Nat. Bank of Corpus Christi v. Morgan*, 143 S.W.2d 757, 761 (Tex. 1940) ("[T]hat the usual royalty in oil and gas leases is 1/8, is in our opinion one so generally known that judicial knowledge may be taken of it.").

First, the first clause, standing alone, does not clearly indicate whether it reserves a floating or fixed royalty interest. The clause reserves "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals," but the instrument provides no indication of the intended meaning of the capitalized terms, and the deed does not define them. Nevertheless, without any analysis, the Court concludes that the clause "clearly indicates that the parties intended to reserve an amount that would 'float' with the governing lease." *Ante* at ___.

As its sole support for that foundational conclusion, the Court relies on *Schlittler v. Smith*, 101 S.W.2d 543, 544 (Tex. 1937), which it asserts "impliedly" supports the Court's construction. *Ante* at ___. *Schlittler* implies no such support. The issue in *Schlittler* was whether the deed reserved 1/2 of the royalty interest or 1/2 of the mineral interest, and thus 1/2 of all bonuses and rentals as well as royalties. 101 S.W.2d at 544. We held that it reserved only 1/2 of the royalties, meaning it reserved "an interest in oil, gas, or minerals paid, received, or realized as 'royalty' under any lease existing on the land at the time of the reservation, or thereafter executed by the grantee, his heirs or assigns." *Id.* In response to the trial court's holding that the deed reserved "one-half of not less than the usual one-eighth royalty," we noted that nothing in the deed "indicate[d] that the royalty to be reserved was the usual one-eighth, although very likely neither of the parties thought it would be less." *Id.* Even if we intended to suggest in *Schlittler* that the deed reserved a floating interest (an issue not argued in that case), that deed reserved "an undivided one-half interest in and to *the royalty rights* on *all of oil and gas* and other minerals," not (as here) "an undivided one-half (1/2) interest in and to *the Oil Royalty*." The deed here reserved an interest specifically in "the Oil Royalty," not to "royalty rights" in general, presenting the question of what specific "Oil Royalty" the parties had in mind.

4

We and the courts of appeals have recognized that this type of clause, expressing a single fraction with a reference to a "royalty,"[5] can describe either a fixed or a floating royalty interest. In *Luckel*, for example, we concluded that a clause granting "an undivided one thirty-second (1/32nd) royalty interest in and to the . . . described property" recited nothing more than that "a 1/32nd royalty interest is conveyed." *Luckel*, 819 S.W.2d at 460–61.[6] Similarly, in *Garrett*, we held that language conveying "one-eighth of all of *the oil royalty*" expressed only an intent to convey "a royalty of one sixty-fourth or one-eighth of the one-eighth royalty retained in the lease." 299 S.W.2d at 906 (emphasis added). And the courts of appeals have made opposite assertions regarding similar provisions. *Compare, e.g., Range Res. Corp.*, 266 S.W.3d at 495 (asserting that language reserving an "undivided one-half (1/2) Royalty . . . of all the oil, gas and/or other minerals in, to, and under or that may be produced" from the land "probably reserved only a fractional [i.e., fixed] royalty interest") *with Coghill*, 358 S.W.3d at 838 (asserting that language reserving "an undivided one-eighth (1/8) interest in and to all of the oil royalty [and] gas royalty" describes the interest "as a fraction of [i.e., floating] royalty").

---

[5] This type of clause differs from those "double-fraction" clauses that actually refer to two separate fractions, reserving—for example—"1/4 of the 1/8th royalty interest in and to all of the oil," *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 889 (Tex. App.—Waco 1987, writ ref'd n.r.e.), or "[o]ne-eighth (1/8) of the usual one-eighth (1/8) royalty on oil and/or gas," *Allen v. Creighton*, 131 S.W.2d 47, 49–50 (Tex. Civ. App.—Beaumont 1939, writ ref'd). As we explained in *Hysaw*, "court opinions construing double-fraction language have yielded mixed results, with no discernible unifying principle except to the extent the outcome derives from the conveying instrument's specific language." *Hysaw*, 483 S.W.3d at 11. Thus, like the clause at issue here, "double fractions in a mineral conveyance may or may not evince intent to fix the interest. Consequently, before ascribing any particular meaning to double-fraction language in a conveying instrument, all the other language in the document must be considered to deduce intent." *Id.* at 14.

[6] We ultimately held that the *Luckel* deed conveyed a floating royalty interest, but we reached that conclusion because *other language* in the deed—specifically, the future-lease clause—provided that the grantee "shall be entitled to one-fourth of *any and all royalties* reserved under said leases." *Luckel*, 819 S.W.2d at 461. As noted, the deed at issue here does not include any such additional language.

In short, standing alone, a clause that reserves a single fractional interest in and to or of a "royalty" may describe either a fixed interest or a floating interest. *Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980) (holding that a clause reserving "an undivided one-half non-participating royalty" reserves "either a 1/2 royalty [i.e., a fixed interest] or 1/2 of royalties [i.e., a floating interest]"). It all depends on what the parties intended by the term "royalty"—or, here, by the reference to "the Oil Royalty." The Court's foundational conclusion—that the first clause "reserves a floating interest"—is thus simply unfounded and incorrect because that clause, standing alone, does not clearly indicate whether it reserves a floating or fixed royalty interest. The Court creates a conflict by attributing meaning to the first clause that its language cannot support. As a result, the Court purports to harmonize language that does not conflict at all.

This brings me to the second reason I disagree with the Court's foundational conclusion: it construes the first clause in isolation, without considering the only other language that provides insight into the first clause's meaning. In what it claims is the "only reasonable way to reconcile these clauses," the Court isolates the first clause, construes it to reserve a floating interest, and then construes the second clause in light of the meaning it attributed to the first clause. By taking this clause-by-clause approach, the Court relegates the second clause to an afterthought, so that it "simply describes the effect of the first" clause and "clarif[ies], as an incidental factual matter, what a 1/2 interest in the royalty amounted to when the deed was executed." *Ante* at ___. The Court thus ignores the approach we insisted upon in *Hysaw*: "*before* ascribing any particular meaning to double-fraction language in a conveying instrument, all the other language in the document must be considered to deduce intent." *Hysaw*, 483 S.W.3d at 14 (emphasis added).

6

In other words, we cannot determine the first clause's meaning without first considering any other language that provides guidance on that meaning. We must read the first clause in its context. That context necessarily includes the second clause, which confirms the Bryans' intent to reserve a royalty "equal to one-sixteenth [1/16] of the production." *Ante* at ___. Contrary to the Court's assertion, the second clause contains the "language indicating that the parties intended to limit the reservation" to 1/2 of the then-standard 1/8 royalty. *Ante* at ___. The second clause is the *only* other language that provides any guidance on the first clause's intended meaning. In light of the second clause, we know for certain that the Bryans understood the first clause's reference to "the Oil Royalty" to refer to a 1/8 royalty. No other language indicates that they intended anything different, or that they intended the reserved amount to change if a future lease provided for a different royalty.

Construing the clauses together does not render either meaningless. The Court asserts that, because the current lease provides for a 1/5 royalty instead of a 1/8 royalty, construing the deed to reserve a fixed 1/16 interest would render the first clause "meaningless" because the reserved interest would not equal "an undivided 1/2 interest" in the current 1/5 royalty. *Ante* at ___. But that analysis is based on the Court's foundational conclusion that the first clause, when improperly "read independently," instead of properly read in context with the second clause (as *Hysaw* requires), creates a floating interest. If, *as the second clause confirms*, the first clause's reference to "the Oil Royalty" refers only and specifically to the then-standard 1/8 royalty, construing the deed to reserve a fixed 1/16 royalty gives meaning to both clauses. In contrast, the Court's holding that the deed reserved a floating royalty that now equals 1/10 of production renders the second

7

clause meaningless. The Court's "meaningless" argument, in other words, depends wholly on its improper foundational conclusion.

Nor does the Court's reliance on the sentence's "grammatical structure" support its conclusion. The Court asserts that the inclusion of a comma between the two clauses makes the second clause a "nonrestrictive dependent clause" that merely "clarif[ies], as an incidental factual matter, what a 1/2 interest in the royalty amounted to when the deed was executed." *Ante* at ___. Although the inclusion of a comma is not "dispositive," the Court asserts, it makes the structure "consistent" with the Court's holding that the deed reserved a floating interest. *Ante* at ___. This argument, of course, also wholly depends on the Court's foundational conclusion regarding the first clause. But in any event, regardless of the "non-dispositive" comma, the second clause is not merely "incidental"; rather, it is the *only* language that sheds any light on the first clause's meaning. Like similar language included as a parenthetical in similar deeds, the second clause "explains and defines" the interest the first clause describes. *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644, 647, 650–51 (Tex. App.—Amarillo 2012, no pet.) (holding that deed that reserved "a one-half non-participating royalty interest (one-half of one-eighth of production)" reserved "a fixed royalty of one-half of one-eighth of production, or one-sixteenth, and cannot reasonably be read to reserve a [floating] one-half royalty" and construing the language to reserve a floating royalty would "require that the parenthetical phrase be ignored, contrary to the rule of construction mandating that we examine the deed as a whole"); *see also Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.) (holding that deed reserving "1/2 of the 1/8Th royalty (same being a 1/16Th of the total production) of oil, gas and minerals" reserved a fixed 1/16 interest in production, "not a 'fraction of royalty'[] determinable upon the execution of some future

8

lease"). So I agree with the Court that the second clause confirms what the Bryans believed the interest "amounted to when the deed was executed," but that does not answer the question of whether they intended the amount to change at some later date. Reading both clauses together, the only intent the deed expressed was the intent to reserve an interest equal to 1/16 of production.

We know from the deed's plain language that the Bryans believed the deed reserved 1/2 of the then-standard 1/8 royalty, "the same being equal to one-sixteenth (1/16) of the production." While "other language in the [deed] and the overall structure of the royalty [reservation]" *could* indicate a different intent, *Hysaw*, 483 S.W.3d at 15, it does not do so here. By construing the first clause in isolation, the Court fails to construe the two clauses together and in context, as *Hysaw* requires. Because nothing in the deed indicates that the Bryans intended the reserved interest to change based on the royalty paid in a future lease, I conclude that the deed reserved a fixed undivided 1/2 interest in and to the then-standard 1/8 royalty, "the same being equal to 1/16 of the production." Because the Court holds otherwise, I dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: June 29, 2018

9