COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROYALTY ASSET HOLDINGS II, LP, CHARLOTTE POE, Trustee of the Gerhardt Family Trust, HAROLD SCHNEIDER, TD MINERALS LLC and SOURCING ROCK, LLC, | § § § § | No. 08-22-00108-CV Appeal from the |
| Appellants, | § | 143rd Judicial District Court |
| v. | § | of Reeves County, Texas |
| BAYSWATER FUND III-A LLC, BAYSWATER FUND III-B LLC, BAYSWATER RESOURCES LLC, COLBURN OIL, LP, DITTO LAND COMPANY, LLC, FALL LAND & CATTLE, LLC, PEGASUS RESOURCES, LLC, ROBBINS FAMILY MINERALS, LP and COG OPERATING, LLC, | § | (TC# 21-03-23912-CVR) |
| Appellees. | | |

## MEMORANDUM OPINION

In this interlocutory permissive appeal, we are asked whether the nonparticipating royalty

interest reserved in a 1945 deed was fixed or floating. Appellees[1] and Appellants[2] submitted

---

[1] Appellees include the following parties: Bayswater Fund III-A LLC, Bayswater Fund III-B LLC, Bayswater Resources LLC, Colburn Oil, LP, Ditto Land Company, LLC, Fall Land & Cattle, LLC, Pegasus Resources, LLC, Robbins Family Minerals, LP and COG Operating, LLC.

[2] Appellants include the following parties: Royalty Asset Holdings II, LP, Charlotte Poe, Trustee of the Gerhardt Family Trust, Harold Schneider, TD Minerals LLC, and Sourcing Rock, LLC.

competing motions for summary judgment where the sole issue was whether the 1945 deed reserved a floating or fixed royalty interest. The trial court held that the reserved interest was fixed, granted Appellees' motions for partial summary judgment, and denied Appellants' motions for partial summary judgment. For the reasons set forth below, we construe the 1945 deed as reserving a 1/4 floating royalty interest. We reverse, render in part, and remand in part.

## BACKGROUND

### A. Factual Background

In 1945, Grantors (Lela S.B. Cobern, Winnie Blackmon, G.H. Blackmon, and Mary L. Blackmon) sold a tract of land in Reeves County to E. Wadley (Grantee) by warranty deed with royalty reservation. In the warranty deed, Grantors expressly reserved a nonparticipating royalty interest as follows:

> EXCEPT that Grantors, for themselves and their heirs and assigns, retain, reserve and except from this conveyance and [sic] undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest) payable or accruing under the terms of any existing or future oil, gas or mineral lease pertaining to or covering the oil, gas and other minerals on, in or under the above described [sic] land. It is distinctly understood and agreed that the interest in royalties hereby retained and reserved by Grantors does not participate in any bonus or delay rentals payable for or accruing under the terms of any such oil, gas and mineral lease or leases, and it shall not be necessary for Grantors to join in, execute or ratify any oil, gas and mineral lease covering said above described tract, the right and privilege to execute any oil, gas and mineral lease or leases covering the full mineral interest in the above described tract being hereby granted and conveyed to Grantees herein, their heirs and assigns.

Over the following decades and after a series of conveyances, Appellees collectively came to own the tract's mineral estate. Similarly, Appellants collectively came to own the nonparticipating royalty interest.

In 2008, a lease was executed on the tract which provided for a 1/4th royalty on oil, gas, and minerals produced. In 2020, Noble Energy acquired the lease and informed Appellees and

2

Appellants the nonparticipating royalty interest should be a floating 1/4th not, as it had been previously interpreted, a fixed 1/32nd.

**B.    Procedural Background**

The Bayswater Appellees[3] sued seeking a declaratory judgment on the nature of the nonparticipating royalty interest. The Poe Appellants[4] answered, filed a counterclaim to the Bayswater Appellees' suit, and alleged that Appellee COG Operating, LLC (COG) was a necessary party in this suit as owner of seventy-six percent of the undivided royalty interest burdened by the nonparticipating royalty interest. Appellant Royalty Asset Holdings II, LP (Royalty) filed its original answer. COG joined the suit by filing an original crossclaim.

The Bayswater Appellees and COG filed separate but similar motions for partial summary judgment where the sole issue was whether the nonparticipating royalty interest was fixed or floating. The Poe Appellants and Royalty filed separate but similar cross motions for partial summary judgment with the same single issue. Following a hearing, the trial court entered a judgment finding the deed reserved a fixed nonparticipating royalty interest of 1/32nd, granting Appellees' motions for partial summary judgment, and denying Appellants' motions for partial summary judgment.

The trial court granted permission for an immediate appeal on the controlling question of whether the deed reserved a fixed 1/32nd or floating 1/4th nonparticipating royalty interest. We accepted this interlocutory permissive appeal.

---

[3] The Bayswater Appellees own an undivided twenty-four percent of the oil, gas, and other minerals under the land. The Bayswater Appellees include the following parties: Bayswater Fund III-A, LLC; Bayswater Fund III-B, LLC; Bayswater Resources, LLC; Colburn Oil, LP; Ditto Land Company, LLC; Fall Land & Cattle, LLC; Pegasus Resources, LLC; and Robbins Family Minerals, LP.

[4] The Poe Appellees include the following parties: Charlotte Poe, Trustee of the Gerhardt Family Trust; Harold Schneider; TD Minerals LLC, and Sourcing Rock, LLC.

**DISCUSSION**

Appellants raise two issues: (1) whether the nonparticipating royalty interest reserved in the 1945 deed is a fixed 1/32nd or floating 1/4th royalty interest; and (2) whether the trial court erred by granting Appellees' motions for partial summary judgment and denying Appellants' motions for partial summary judgment.[5] We consider each issue in turn.

**A.  The 1945 deed reserved a floating 1/4th nonparticipating royalty interest.**

The issue in this case is whether the 1945 deed reserved a fixed 1/32nd or floating 1/4th royalty. Focusing on the relevant language, the 1945 deed provides as follows:

> EXCEPT that Grantors, for themselves and their heirs and assigns, retain, reserve and except from this conveyance and [sic] undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest) payable or accruing under the terms of any existing or future oil, gas or mineral lease pertaining to or covering the oil, gas and other minerals on, in or under the above described land.

The Poe Appellants and Royalty argue a holistic review of the 1945 deed reserved a floating 1/4 royalty interest. Both specifically point to the historical context of the 1/8 royalty and the 1945 deed's specific references to "the land owner's usual 1/8th royalty interest" and future oil, gas, or mineral leases. The Bayswater Appellees and COG argue that the historical context of the 1/8 royalty is not relevant because there are no conflicting provisions within the 1945 deed and that the fractions are consistent.

1.  *Standard of Review and Applicable Law*

Oil and gas deeds are construed according to standard rules of contract construction. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 689 (Tex. 2022). First, we

---

[5] The Poe Appellants raise these issues in this order, but Royalty raises the same issues in opposite order. We address these issues in the order raised by the Poe Appellants.

must determine whether the deed is ambiguous, "considering its language as a whole in light of well-settled construction principles and the relevant surrounding circumstances." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). A deed is not rendered ambiguous because the parties have different interpretations unless both interpretations are reasonable. *Id*. at 743-44. Here, the parties both state the deed is not ambiguous, and we agree. *See, e.g., Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Garrett v. Dils Co.*, 299 S.W.2d 904, 905-906 (Tex. 1957).

"The interpretation of an unambiguous deed is a question of law for the court." *Bridges v. Uhl*, No. 08-21-00130-CV, 2022 WL 17985705 at *5 (Tex. App.—El Paso 2022, no pet. h.).[6] In construing an unambiguous deed, we ascertain the intent of the parties as expressed in the writing. *Nettye Engler Energy, LP*, 639 S.W.3d at 689-90. We consider the entire document and attempt to harmonize all provisions, so each is given effect, and none is rendered meaningless. *Id*. at 690; *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). When construing an unambiguous deed, we favor "a holistic and harmonizing approach and reject[] mechanical rules of construction, such as giving priority to certain types of clauses over others or requiring the use of magic words." *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016). Further, we analyze the text based on the ordinary meaning at the time of drafting. *Van Dyke v. Navigator Grp.*, No. 21-0146, 2023 WL 2053175, *3 (Tex. 2023) ("The meaning of an unamended text . . . is unaffected by the passage of time, linguistic developments, or the evolution of usage.").

---

[6] After our decision in *Bridges*, COG filed a supplemental letter requesting that we grant the motion for rehearing in that case as it was incorrectly decided. We denied the motion for rehearing in *Bridges* on February 14, 2023. *Bridges v. Uhl*, No. 08-21-00130-CV, Order at 3 (Tex. App.—El Paso Feb. 14, 2023), https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=188a35f9-6952-4964-8bb6 f762c05c74da&coa=coa08&DT=Motion%20Disp&MediaID=edca06e4-fe09-42d2-8bc7-2dd425c166e1.

i.   Royalty Interests

The right to receive royalties is one of the rights and attributes encompassed in a mineral estate. *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995). A royalty interest is "a nonpossessory interest in minerals that may be separately alienated." *Luckel*, 819 S.W.2d at 463. "Royalty interests may be conveyed or reserved 'as a fixed fraction of total production' (fractional royalty interest) or 'as a fraction of the total royalty interest' (fraction of royalty interest)." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 464). A fixed or fractional royalty interest remains constant and is not affected by the royalty amount in an oil, gas, or mineral lease. *Id*. A floating or fraction of royalty interest varies depending on the royalty in an oil, gas, or mineral lease. *Id*. A floating royalty interest is calculated by multiplying the fraction of the royalty interest by the lease's royalty. *Id*. The language used in the deed determines whether a royalty interest is fixed or floating. *Id*.

ii.   The Legacy of the 1/8th Royalty and the Theory of Estate Misconception

When a deed contains multiple fractions, disputes over whether a royalty interest is fixed, or floating are common. *Hysaw*, 483 S.W.3d at 9; *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 454 (Tex. 1998) (plurality op.); *Garrett*, 299 S.W.2d at 905; *Bridges*, 2022 WL 17985705 at *6. In a deed with multiple fractions, the fractions are frequently multiples of 1/8. *U.S. Shale Energy II, LLC v. Laborde Prop., L.P.*, 551 S.W.3d 148, 152 (Tex. 2018). "The near ubiquitous nature of the 1/8 royalty—dubbed by some as 'the legacy of the 1/8th royalty' or 'historic standardization'—no doubt influenced the language used to describe the quantum of royalty in conveyances of a certain vintage." *Id*. at 9-10. This historical context makes it possible that parties may have operated under the assumption that lease royalties would always be 1/8. *Id*. at 10; *see Luckel*, 819 S.W.2d at 462 ("The assumption that the parties contemplated only the usual

one-eighth royalty is equally consistent with an actual intent to convey a fixed 1/32nd interest or a one-fourth of the reserved royalty interest.").

Multiple-fraction cases with 1/8 also often implicate the theory of estate misconception. *Hysaw*, 483 S.W.3d at 10. Estate misconception "refers to a once-common misunderstanding (perpetuated by antiquated judicial authority) that a landowner retained only 1/8 of the minerals in place after executing a mineral lease instead of a fee simple determinable with the possibility of reverter in the entirety." *Id*. Under the theory of estate misconception, a grantor would assume he owned 1/8 of the minerals and may use fractions of 1/8 to convey a fraction of what he perceived he owned. *Id*. (citing Laura H. Burney, *The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed Construction*, 34 S. Tex. L. Rev. 73, 89 (1993)).

The Texas Supreme Court recently determined that their "analysis in *Hysaw* thus warrants the use of a rebuttable presumption that the term 1/8 in a double fraction in mineral instruments of this era refers to the entire mineral estate." *Van Dyke*, 2023 WL 2053175 at *7. This presumption is, however, readily rebuttable and the entire instrument must be examined to determine if the presumption stands. *Id*.

2.    *The 1945 Deed*

We now turn to the text of this case's 1945 deed and interpret it using a holistic review. Several terms within the reservation inform the meaning of the deed's text and are descriptive of the nature of the royalty interest.

i.    The Multiple Fractions

First, the deed expressly provides that grantors, "reserve and except from this conveyance and undivided 1/4th of the landowner's usual 1/8th royalty interest." Under *Van Dyke*, there is a rebuttable presumption that the 1/8 in this context refers to the entire mineral estate. *Id*.; *see*

7

*Bridges*, 2022 WL 17985705 at *7 (citing *Greer v. Shook*, 503 S.W.3d 571, 579 (Tex. App.—El Paso 2016, pet. denied)); *see Laborde*, 551 S.W.3d at 153 (providing the royalty rate was typically 1/8th in 1951).

The deed's use of multiple fractions with 1/8 implicate *Van Dyke*'s rebuttable presumption 1/8 was intended to refer to the entire mineral interest. *Van Dyke*, 2023 WL 2053175 at *7. Therefore, under the rebuttable presumption we read the deed as reserving an undivided 1/4 of the entire mineral interest—a floating not fixed interest. We must, however, examine the entire instrument to ensure that the presumption is not rebutted in the remaining text. *Id.* Therefore, we turn to an analysis of the other parts of the 1945 deed.

ii.  The Usual 1/8th Royalty Language

The deed references "the land owner's usual 1/8th royalty interest." Other courts have found "fraction of 'the usual one-eighth (1/8th) royalty' language typically indicates an intent to reserve a floating interest." *Hoffman v. Thomson*, 630 S.W.3d 427, 432 (Tex. App.—San Antonio 2021, pet. filed); *see Graham v. Prochaska*, 429 S.W.3d 650, 659 (Tex. App.—San Antonio 2013, pet. denied) ("The use of the word 'the' denotes that 'the one-eighth royalty' is a distinct or particular royalty."). In *Bridges*, we determined that, together with other language within the conveyance, the "repeated reference to the 'usual' 1/8 royalty, which relates to the estate misconception, or the parties' use of the then-standard 1/8 royalty as a proxy for the landowner's royalty." *Bridges*, 2022 WL 17985705 at *8.

While the 1945 deed in this case only references the usual 1/8 royalty once, it further defines the usual royalty as "the land owner's usual 1/8th royalty interest." As discussed in *Bridges*, the usual 1/8th royalty can stand as a proxy for the landowner's royalty. *Id*. Therefore, the specific reference to the landowner's royalty and the use of "the usual 1/8th royalty" guide us

8

to a determination this language supports and does not rebut the presumption the deed reserved a floating 1/4th interest.

### iii.     The Single-Fraction Parenthetical

In the 1945 deed, the multiple fractions and the reference to the landowner's usual 1/8th royalty, are followed by a parenthetical: "(being a full $1/32^{nd}$ royalty interest)." One fourth of 1/8th is one 32nd. When we consider a deed holistically, we must harmonize the deed's language in its entirety "giving effect to all parts of the deed so no provision is rendered meaningless." *Greer*, 503 S.W.3d at 582; *Hysaw*, 483 S.W.3d at 13.

If we consider the parenthetical in isolation, it implies a fixed royalty interest of 1/32nd. Assuming a fixed royalty interest, we then consider the multiple fraction portion of the deed: "undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest)." If the multiple fractions were intended to show a fixed royalty, then the parenthetical merely restates the prior clause. In *Bridges*, we examined a deed where there was a similar restatement. *Bridges*, 2022 WL 17985705 at *8. In that case, we considered the grammatical structure of the sentence and determined that a nonrestrictive clause should not be made essential rather than incidental. *Id*. (quoting *Laborde*, 551 S.W.3d at 153).

In this case, we are faced with a parenthetical. Parenthesis "are used in pairs to enclose matter that is helpful but not essential." BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.35 at 30 (4th ed. 2018). Similar to *Bridges*, if we apply basic grammatical rules to the single-fraction parenthetical we must view it as a non-essential explanation of the multiple-fraction clause. *Id*. at 31; *Bridges*, 2022 WL 17985705 at *8; *see Laborde*, 551 S.W.3d at 154 (recognizing that the court's interpretation that gives effect to all of the sentence's parts is consistent with the grammatical structure). Therefore, we determine that the parenthetical single-fraction is consistent

with the rebuttable presumption that the royalty interest is a floating 1/4 nonparticipating royalty interest.

iv.      Reference to Existing and Future Leases

The 1945 deed also contains the following provision: "payable or accruing under the terms of any existing or future oil, gas, or mineral lease." In *Bridges*, we held that references to future production show "the prospective contemplation of the royalty taking effect at a later time." *Bridges*, 2022 WL17985705 at *8. Similar to *Bridges*, the reference to existing and future leases implies that the authors of the deed contemplated the royalty taking place at a future time. *See Laborde*, 551 S.W.3d at 153 ("the language quite plainly reserves 1/2 of the '[r]oyalty,' which must refer to a royalty that could come into being at some point in the future").

Considering the deed holistically, which we must, we conclude the grantor's intent was to preserve a floating royalty. The deed's use of multiple fractions with 1/8 implicate *Van Dyke*'s rebuttable presumption of a floating interest. The remaining text of the deed supports the presumption with the following hallmarks of a floating royalty: reference to 'the land owner's usual 1/8th royalty interest' and reference to future leases. Further, the single fraction, which may on its own imply a fixed royalty interest, is set in a parenthetical and better understood as an explanation of the multiple-fraction clause.

For these reasons, we sustain the Poe Appellants' first issue and Royalty's second issue.

*3.      The trial court erred in denying Appellants' partial motions for summary judgment and granting Appellees' partial motions for summary judgment.*

Second, Appellants assert the trial court erred in denying their partial motions for summary judgment and in granting Appellees partial motions for summary judgment. We agree.

10

### i. Standard of Review

We review declaratory judgments under the same standard as other judgments or decrees. TEX. CIV. PRAC. & REM. CODE ANN. §37.010; *Posse Energy, Ltd. v. Parsley Energy, LP*, 632 S.W.3d 677, 686 (Tex. App.—El Paso 2021, pet. denied); *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). When a trial court renders declaratory judgment through summary judgment proceedings, we review the judgment under the same standards we apply to summary judgment. *Posse Energy, Ltd.*, 632 S.W.3d at 686; *Hawkins*, 214 S.W.3d at 719.

We review a trial court's decision granting summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a motion for summary judgment, the movant must show that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. § 166A(C); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When cross-motions for summary judgment are filed, we consider each motion and render the judgment the trial court should have reached. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *Posse Energy, Ltd.*, 632 S.W.3d at 686.

### ii. Analysis

The Bayswater Appellees and COG filed separate but similar motions for partial summary judgment where the sole issue was whether the nonparticipating royalty interest was fixed or floating. The Poe Appellants and Royalty filed separate but similar cross motions for partial summary judgment with the same single issue. Following a hearing, the trial court entered a judgment finding the deed reserved a fixed nonparticipating royalty interest, granting Appellees'

motions for partial summary judgment, and denying Appellants' motions for partial summary judgment.

As outlined above, we have already determined the nonparticipating royalty interest reserved in the 1945 deed was floating. Accordingly, we hold that Appellants' partial motions for summary judgment should have been granted and Appellees' partial motions for summary judgment should have been denied.

Therefore, the Poe Appellants second issue and Royalty's first issue are sustained.

## CONCLUSION

For the foregoing reasons, we reverse and render in part and reverse and remand in part. We reverse the trial court's denial of Appellants' motions for partial summary judgment and render a partial summary judgment in Appellant's favor declaring the 1945 deed reserved a floating 1/4 nonparticipating royalty interest. We further reverse the trial court's grant of Appellees' motions for partial summary judgment and remand the cause for further proceedings.

YVONNE T. RODRIGUEZ, Chief Justice

March 15, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

12