

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CLINTON T. MONTGOMERY, MANAGING TRUSTEE OF THE TRI-MONT IRREVOCABLE TRUSTS, KIMBERLY SHIPMAN DYESS, MELODY SHIPMAN DELONG, and MICHELE MITCHELL GRIMSLEY, | § § § § | No. 08-23-00153-CV Appeal from the 143rd Judicial District Court of Reeves County, Texas |
| Appellants, | § | |
| v. | § | Cause No. 21-06-24013-CVR |
| ES3 MINERALS, LLC and ECHO MINERALS, LP, | | |
| Appellees. | | |

**OPINION**

In this appeal, we are asked to interpret the conveyance of a nonparticipating royalty interest in a 1955 deed. The parties contest whether the deed conveyed a floating 1/4 royalty interest or a fixed 1/32 royalty interest. Because we determine the presumption of a floating royalty interest is not rebutted by the language in the remainder of the deed, we reverse the trial court's rulings on the parties' cross motions for summary judgment, render judgment that the interest conveyed was a 1/4 floating royalty interest, and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1955, J.D. Arthur and his wife, Elva J. Arthur, as grantors, conveyed to W. Travis Lattner, Jr., grantee, a nonparticipating royalty interest through a warranty deed conveying certain real property in Reeves County, Texas, using this operative language: "[T]he Grantors do hereby expressly include in this conveyance, a non-participating royalty of one-fourth (l/4th) of the landowner's usual one-eighth (1/8th) royalty on oil and gas produced and saved from said land[.]"Appellants, who include Clinton T. Montgomery, Managing Trustee of the Tri-Mont Irrevocable Trusts, Kimberly Shipman Dyess, Melody Shipman Delong, and Michele Mitchell Grimsley, are the successors-in-interest to Lattner, the grantee; while Appellees, ES3 Minerals, LLC and Echo Minerals, LP, are successors-in-interest to the Arthurs, the grantors. Ownership of the royalty interest is not in dispute; rather, the parties disagree on the nature and quantum of the conveyed interest.

Appellants brought a declaratory judgment action seeking a declaration that the 1955 deed conveyed a floating 1/4 nonparticipating royalty interest, individually owned as follows: Tri-Mont Irrevocable Trusts (1/8), Kimberly Shipman Dyess (1/24), Melody Shipman Dyess (1/24) and Michel Mitchell Grimsley (1/24). To recover royalty payments made to Appellees, the suit additionally sought a money judgment for money had and received and unjust enrichment. Last, Appellants sought recovery of attorney's fees. ES3 Minerals answered with a general denial. Echo Minerals also answered with a general denial, included certain affirmative defenses, and counterclaimed for declaratory judgment, in which it also sought declarations regarding the meaning of the nonparticipating royalty interest conveyed in the subject deed. Specifically, Echo Minerals alleged the deed language conveyed a fixed 1/32 nonparticipating royalty interest, not a floating 1/4 nonparticipating royalty interest. Also, Echo Minerals sought recovery of attorney's

2

fees. Appellants and Echo Minerals each moved for partial summary judgment on their dueling interpretations of the deed's language. In doing so, both sides claimed the language at issue was not ambiguous.

After a hearing, the trial court granted Echo Minerals' motion for partial summary judgment and denied Appellants' motion, finding that the deed in question conveyed a fixed 1/32 nonparticipating royalty interest. The trial court granted permission for an interlocutory appeal on the issue of the interpretation of the conveyance. Appellants petitioned this court for permissive appeal, which we granted, and this appeal followed.[1]

## ISSUES ON APPEAL

In two issues, Appellants urge that the trial court improperly construed the conveyance of the royalty interest and thus improperly granted Echo Minerals' motion for partial summary judgment and denied their own. Appellants argue the deed language—particularly the inclusion of double fractions that include a 1/8 fraction—triggers a presumption that the use of such double fraction was purposeful and that 1/8 reflects the entire royalty interest that would be received under any present or future oil and gas leases, not just a fixed fraction of a 1/8 royalty. *See Van Dyke v. Navigator*, 668 S.W.3d 353 (Tex. 2023); *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016). That is, the use of the fraction of 1/8 was used as a proxy for the grantors' entire royalty interest, so that the grantors' conveyance of 1/4 of the landowner's usual 1/8 royalty indicates the intent to convey a 1/4 floating royalty interest. Conversely, Appellees claim six distinct provisions of the deed rebut the *Van Dyke* presumption indicating the double fraction used in the conveyance was "nothing

---

[1] ES3 Minerals filed a joinder brief supporting Echo Minerals' position on appeal. *See* Tex. R. App. P. 9.7.

more than a double fraction" that transferred a fixed 1/32 royalty interest in the oil and gas produced and saved from the land.

## DISCUSSION

### A. Standard of review

We review de novo a declaratory judgment granted on a traditional motion for summary judgment. *Angel v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022). Traditional summary judgment is appropriate where there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. *Id.*; s*ee* Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issue and the trial court grants one motion but denies the other, the reviewing court should review the evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Angel*, 642 S.W.3d at 488.

### B. Deed interpretation principles

The interpretation of an unambiguous deed is a question of law for the court. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). If a deed is worded in such a way that it can be given a certain or definite meaning, then the deed is not ambiguous. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018). Ambiguity does not arise merely because parties assert differing interpretations. *See id.* Rather, "ambiguity exists only if both parties' interpretations are reasonable." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020). As is the case here, "[e]ven when the parties agree that an agreement is unambiguous . . . a reviewing court should independently confirm that determination." *Occidental Permian, Ltd. v. Citation 2002 Investment LLC*, No. 23-0037, 2024 WL 2226281, at *3 (Tex. May 17, 2024) (citing *Piranha Partners*, 596 S.W.3d at 743–44).

When interpreting a deed, our objective is to "'ascertain the true intentions of the parties as expressed in the writing itself,' beginning with the instrument's express language." *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 689 (Tex. 2022) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). Our initial analysis is "confined to the four corners of the document[.]" *Van Dyke*, 668 S.W.3d at 361.

"To discern intent, words and phrases must be construed together and in context, not in isolation." *Hysaw*, 483 S.W.3d at 13. "Words and phrases generally bear their ordinary meaning unless the context supports a technical meaning or a different understanding. *Id*. (quoting *In re Office of Att'y Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015 ("Given the enormous power of context to transform the meaning of language, . . . [t]he import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive."). In doing so, the Supreme Court of Texas has repeatedly affirmed its commitment to "a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument." *Id*. To the extent possible, apparent inconsistencies or contradictions must be harmonized by construing the document as a whole. *Id*. In determining intent, a fundamental premise of ascertaining the ordinary meaning of a term is that "a text retains the same meaning today that it had when it was drafted." *Van Dyke*, 668 S.W.3d at 359. As a result, we may consider facts and surrounding circumstances at the time of the instrument's execution but only to the extent they inform the meaning of the instrument's text. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 767 (Tex. 2018).

In using an interpretation of a term that is utterly, mathematically counterintuitive but historically significant, the Supreme Court has instructed that when we encounter a double fraction involving 1/8 in a mineral reservation or conveyance (e.g., 1/4 of 1/8), we do not give the fraction

1/8 its typical meaning of one share out of eight shares. *See Van Dyke,* 668 S.W.3d. at 364. Rather, when we interpret a mineral conveyance or reservation executed in the early to mid-twentieth century, *Van Dyke* directs us to begin with the presumption that "1/8 reflects the *entire* mineral estate, not just 1/8 of it[,]" or, in the context of royalty interests, that 1/8 was used "as a placeholder for future royalties *generally*[.]" *Id.* at 364–63 (emphasis in original); *see also Hysaw,* 483 S.W.3d at 4 (construing a 1947 will's devise of a royalty interest). This presumption, according to *Van Dyke,* is a rebuttable one that "reflects historical usage and common sense." *Van Dyke,* 668 S.W.3d at 364.

The reasoning behind this presumption is twofold. *See Van Dyke,* 668 S.W.3d at 363. First, there is the estate misconception theory. The estate misconception theory refers to prevalent, mistaken belief that a lessor receiving a 1/8 royalty only retained "a 1/8 interest in the minerals, rather than the *entire* mineral estate in fee simple determinable with the possibility of reverter of the entire estate." *Id.* (emphasis in original). Because of this mistaken belief, for many years mineral lessors would refer to what they believed was their entire interest in the mineral estate by using only "1/8." *Id.* The ill-founded usage of 1/8 to refer to a landowner's entire mineral estate "ran rampant in instruments of this time," has been recognized by Texas courts, and has even been called "patent evidence that the parties were functioning under the estate misconception." *Id.* (citing Laura H. Burney, *The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed Construction,* 34 S. Tex. L. Rev. 73, 90 (1993)).

Second, confusion also abounded around the prevalent belief that a landowner's royalty would always be 1/8. *Id.* Landowners would thus use 1/8 "as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value." *Id.* And again, this belief was so pervasive that the Supreme Court of Texas took judicial notice of the

6

misunderstanding, specifically in the context of double-fraction royalties. *Id.* (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957); *see Thomson v. Hoffman*, 674 S.W.3d 927, 928–29 (Tex. 2023) (per curiam) (stating *Van Dyke* analysis must be applied to royalty reservations); *see also Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) ("One-eighth was the 'usual' royalty so standard in the 1920s and 1930s that all Texas courts took judicial notice of it."); *U.S. Shale Energy II, LLC V. Laborde Properties, Lp.*, 551 S.W.3d 148, 153 (Tex. 2018) (providing that "this rate was typically 1/8 in 1951"); *Garrett*, 299 S.W.2d at 907 (taking judicial notice in 1957 "that the usual royalty provided in mineral leases is one-eighth").

The *Van Dyke* presumption is "readily and genuinely rebuttable," and we must examine the entire instrument to determine whether the text of the instrument rebuts the presumption. *Van Dyke*, 668 S.W.3d at 364. After applying the *Van Dyke* presumption, ordinary rules of contract interpretation apply. *See id.* at 365; *Nettye Engler*, 639 S.W.3d at 689 (stating standard rules of contract construction apply to the interpretation of an oil and gas deed). And generally, a royalty deed is subject to the same rules of construction as a mineral deed. *Luckel*, 819 S.W.2d at 464.

Only if a text is incapable of clear meaning, that is, unavoidably ambiguous, will we consider evidence outside the four corners of the document to determine its meaning. *Id.* at 361, 365. When a text is inescapably ambiguous, a fact-finder may be needed to resolve its meaning. *Id.* at 365.

### C. Nonparticipating royalty interests

"An instrument conveying land in fee simple transfers both the surface estate and all minerals and mineral rights, unless the instrument contains a reservation or expresses a contrary intention." *Hysaw*, 483 S.W.3d at 8. A mineral estate encompasses five rights and attributes, one

of which is the right to receive royalties.[2] *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995).

A royalty interest has long been defined as "a nonpossessory interest in minerals that may be separately alienated." *Luckel*, 819 S.W.2d at 463. "The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place." *Id.* A royalty interest that does not include the right to lease the mineral estate, to receive delay rentals, or to receive bonus payments is called a nonparticipating royalty interest. *See Hysaw*, 483 S.W.3d at 9.

A royalty interest may be conveyed or reserved in one of two ways: as a fixed fraction of total production (called a "fractional royalty interest") or as a fraction of the total royalty interest (called a "fraction of royalty interest"). *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819 S.W.2d at 464) (cleaned up). "A fractional royalty interest is referred to as a fixed royalty because it 'remains constant' and is untethered to the royalty amount in a particular oil and gas lease[,]" that is, it "convey[s] a fixed fraction of gross production." *Laborde*, 551 S.W.3d at 152. "A fraction of royalty interest is referred to as a floating royalty because it varies depending on the royalty in the oil and gas lease in effect." *Id.* It is calculated by multiplying the fraction in the royalty conveyance by the royalty in the lease. *Id.* The *Van Dyke* presumption, treating 1/8 as serving as a placeholder for future royalties generally, is a presumption of a floating royalty interest. *See Van Dyke*, 668 S.W.3d at 365–66; *Hysaw*, 483 S.W.3d at 12–13, 16.

---

[2] The five rights encompassed in a mineral estate include the right to develop, the right to lease, the right to receive bonus payments, the right to receive delay rentals, and the right to receive royalty payments. *Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016) (quoting *French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995).

### D. Analysis

In their first issue, Appellants argue the language of the 1955 deed establishes that the intent of the parties was to convey a 1/4 nonparticipating royalty interest, not a fixed 1/32 interest of that type of mineral interest. Related to that interpretation, Appellants' second issue asserts the trial court erred in denying their motion for partial summary judgment and granting Echo Minerals' motion. For our purposes here, because the resolution of the second issue relies on the deed interpretation addressed in the first issue, we consider both issues together to avoid unnecessary duplication and overlapping analysis. *See* Tex. R. App. P. 47.1

The parties' disagreement is centered on whether the 1955 deed conveyed a fixed royalty on oil and gas, that is, a fixed fraction of total production; or a floating royalty, a fraction of the total royalty interest that varies depending on the royalty percentage in the mineral lease, in line with the *Van Dyke* presumption.[3] Returning to the text, the royalty conveyance portion of the deed in question provides as follows:

> [T]he Grantors do hereby expressly include in this conveyance, a non-participating royalty of one-fourth (l/4th) of the landowner's usual one-eighth (1/8th) royalty on oil and gas produced and saved from said land, together with one-half (1/2) of the Grantors' present interest in any royalty on sulphur or substances from which sulphur is derived, but neither the Grantee nor his heirs or assigns shall participate in any bonus or delay rentals on leases on said land, nor shall they be entitled to join in the execution of any future lease or leases on any portion of said land[.]

---

[3] Notably, the parties' arguments regarding interpretation of the conveyance changed somewhat between the time of filing their competing motions for partial summary judgment and filing their briefs on appeal, likely due to the Supreme Court of Texas's issuance of *Van Dyke* in the interim. Nonetheless, the parties' briefs indicate their recognition that *Van Dyke* directs us to begin with the rebuttable presumption that the use of 1/8 here was as a term of art, commonly used to reference mineral interests during this era. We believe this to be so even though the deed here involves a royalty conveyance rather than a mineral estate reservation, as was the case in *Van Dyke*. *See Thomson v. Hoffman*, 674 S.W.3d 927, 929 (Tex. 2023) (per curiam) (remanding case involving interpretation of royalty reservation for consideration under *Van Dyke* framework); *Permico Royalties, LLC v. Barron Props. Ltd.*, 2023 WL 4442007 (Tex. App.—El Paso July 10, 2023, pet. filed) (mem. op.) (applying *Van Dyke* presumption to interpretation of royalty reservation).

The conveyance language here, using a double fraction involving 1/8, requires that we begin with a rebuttable presumption that the 1/8 in this context was used as a placeholder for the standard royalty, and not to set an arithmetical value. *See Van Dyke*, 668 S.W.3d at 363–64; *Hysaw*, 483 S.W.3d at 13; *see also Bridges v. Uhl*, 663 S.W.3d 252, 264 (Tex. App.—El Paso 2022, no pet.). Employing this presumption, we read the deed as conveying to the grantees a floating 1/4 nonparticipating royalty interest in existing and future leases. Accounting for the parties' contested interpretations and following *Van Dyke*'s directives, we must next examine whether the remainder of the text of the instrument rebuts this presumption of a placeholder for the royalty, not as a fixed value. *Id.*

Turning to the language of the deed before us, the granting clause references "***the landowner's usual*** one-eighth 1/8th royalty." Appellants assert this language triggers the application of the estate misconception theory.

Our sister court has determined in this context that "[t]he use of the word 'the' denotes that 'the one-eighth royalty' is a distinct or particular royalty." *Graham v. Prochaska*, 429 S.W.3d 650, 659 (Tex. App.—San Antonio 2013, pet. denied). In addition, this Court has also recognized that "the usual 1/8 royalty" can stand as a proxy for the landowner's royalty. *Bridges*, 663 S.W.3d 265. Further, we have previously determined that, even if, as here, that language is used only one time in the deed, that a "specific reference to the landowner's royalty and the use of 'the usual 1/8 royalty'" supports the presumption of an intended floating interest. *Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC*, 2023 WL 2533169, at *4 (Tex. App.—El Paso Mar. 15, 2023, pet. denied).

We find it significant here that the Arthurs used "Grantors" in all other areas of the deed, but in this conveyance, the language deployed is "a non-participating royalty of one-fourth (1/4th)

10

of the *landowner's* usual one-eighth (1/8th)" (emphasis added). As we did in *Royalty Asset Holdings II*, we determine that this language supports and does not rebut the *Van Dyke* presumption that the deed conveyed a floating 1/4 nonparticipating royalty interest. *See id.*

In attempting to rebut the *Van Dyke* presumption, Appellees make various arguments citing six clauses in the deed, arguing they easily rebut the floating-interest presumption because they establish that the grantors were under no misconception about the extent of their ownership of the mineral estate, and right to royalties. Appellees claim that the text itself establishes that a double fraction was in fact used as nothing more than a double fraction. Illustrating, Appellees reference these six clauses:

| | |
|---|---|
| Introductory Clause | "All of Section Two (2), Block C-18, Public School Land Survey, Reeves County, Texas, Save and Except . . . six (6) tracts of land [that had been conveyed in a prior transaction]." |
| Mineral/Sulfur Reservation[4] | "[I]t is expressly understood and agreed that this conveyance is made subject to a reservation in favor of the State of Texas of 1/16th of all minerals in said land except sulphur and 1/8th of all sulphur and other mineral substances from which sulphur may be derived or produced as a free royalty to the State as set forth in the Patent on said land . . . and to two certain oil and gas leases on said land . . . ." |
| Arthur Reservation | "[T]he Grantors [i.e., the Arthurs] herein do hereby reserve unto themselves, their heirs and assigns, all of the oil, gas and other minerals, royalties, and mineral rights not hereinafter expressly conveyed to the Grantee [i.e., Mr. Lattner]." |
| First Conveyance Recital | "[A]ll of [the Grantors'] right, title and interest in and to all of the oil, gas and other minerals in and under a tract of 39.1 acres of land out of the above described 380 acres of land . . . ." |

---

[4] We recognize "sulfur" as the correct spelling of element number 16 according to the International Union of Pure and Applied Chemistry since at least 1990 and the usual spelling in today's American English. *See So long Sulphur*, Nature Chemistry 1, 333 (2009), https://doi.org/10.1038/nchem.301. We use the older spelling, "sulphur," only when quoting the deed.

| | |
|---|---|
| Second Conveyance Recital | "On the remaining portion of said land, being the 380 acres, more or less, save the 39.1 acres next above mentioned, the Grantors do hereby expressly include in this conveyance, a non-participating royalty of one-fourth (l/4th) of the landowner's usual one-eighth (l/8th) royalty on oil and gas produced and saved from said land, together with one-half (1/2) of the Grantors' present interest in any royalty on sulphur or substances from which sulphur is derived . . . ." |
| Exception Clause | "all oil, gas and mineral rights not expressly herein conveyed are hereby EXCEPTED from this conveyance." |

First, Appellees argue the use of "all" in the Introductory Clause, the Arthur Reservation, the two conveyance recitals, and the Exception Clause indicates the Arthurs knew they owned all the conveyed property interests, save for narratively articulated exceptions. Appellees argue the Arthurs used "all" when they intended to refer to the entirety of the mineral estate, but when they intended to refer to only a fraction of the mineral estate, including royalty interests, they used fractions. We do not believe this is the case. In fact, in the First Conveyance Recital, although the Arthurs used "all," they modified it with the phrase immediately following: "of [the Grantors'] right, title and interest." In this instance, the Arthurs limited "all" to only that part of "all" to which they had "right, title and interest."

Second, Appellees claim the use of 1/8 to refer to the landowner's usual interest was not "anomalous or unique" because 1/8 royalty in sulfur had also been reserved to the State. We do not find a reservation in a separate document, which is merely referenced in the deed at hand, to be relevant to the construction of this conveyance. *See Van Dyke*, 668 S.W.3d at 361 (providing that the initial analysis remains confined to the four corners of the document as usual); *see also Garrett*, 299 S.W.2d at 906.

Third, Appellees urge us to consider a second double fraction—though it does not actually appear in the deed here—contemplated when determining the quantum of sulfur royalties conveyed to Lattner by the Second Conveyance Recital. That is, Appellees argue the 1/2 of the Arthurs' present interest must be multiplied by the Arthurs' 7/8 sulfur royalty referenced in the Mineral/Sulfur Reservation to determine the quantum of the conveyance to Lattner. Based on this contemplated arithmetic, Appellees further argue the deed "never used 'single fractions' . . . to memorialize royalty conveyances." However, we remain unpersuaded. We will not insert a double fraction where none appears, and we will not group an unwritten double fraction with actually appearing.

Last, Appellees claim the "Arthur Reservation" would be nonsensical if the Second Conveyance Recital conveyed everything to Lattner, meaning there was nothing for the Arthurs to reserve. Considering that Appellants do not argue that the Second Conveyance Recital conveyed everything to Lattner, but only a 1/4 royalty, this argument also fails.

In summary, none of Appellees' arguments sufficiently rebut the *Van Dyke* presumption of conveyance of a 1/4 floating nonparticipating royalty interest. We determine, then, that the text of the entire deed, read holistically, is capable of clear meaning, and, thus, it is unambiguous. The intent of the language is consistent with the presumption that the royalty interest is 1/4, and the wording confirms the grantors' intent to convey a 1/4 floating nonparticipating royalty interest. *See Van Dyke*, 668 S.W.3d at 364–65; *Hysaw*, 483 S.W.3d at 13. The lack of any text within the four corners of the deed that rebuts the presumption leads us to conclude that the grantors of the 1955 deed did not use 1/8 in its arithmetical sense in conveying this royalty interest but instead intended to convey a 1/4 interest in nonparticipating royalties in general. *See id.* at 366. Accordingly, we hold the 1955 deed conveyed a floating 1/4 nonparticipating royalty interest.

Based on that determination, we further conclude the trial court erred in granting Echo Minerals' motion for partial summary judgment, and instead, it should have granted Appellants' motion.

We sustain Appellants' first and second issues.

## CONCLUSION

We reverse the trial court's denial of Appellants' motion for partial summary judgment and render a partial summary judgment in Appellants' favor declaring that the 1955 deed conveyed a floating 1/4 nonparticipating royalty interest. We further reverse the trial court's granting of Echo Minerals' motion for partial summary judgment and remand the cause for further proceedings consistent with this opinion.


GINA M. PALAFOX, Justice


May 30, 2024

Before Palafox, J., Soto, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.) (Sitting by Assignment)