

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-19-00771-CV

Kent B. **HOFFMAN**, Susan Hoffman Binieck, E. Peter Hoffman Jr., and Marni H. Cooney,
Appellants

v.

Andrew M. **THOMSON**; CDG Peeler Family Limited Partnership; Cynthia L. Littlefield; The
Dick Family Irrevocable Trust; Gordon G. Thomson; Jane Elizabeth Erzen; Larry Wayne
McCarty; Linda M. Ball; Michael David Dick; North Thomson Oil and Gas LP; Patricia P.
Fleming; Paul W. Peeler Family Limited Partnership; Sandra Shannon Collins; Shannon Family
Trust; Thomson Oil & Gas Investments LP; Coconut Point ST, LLC; Coconut Point OE, LLC;
Colonial Villa Estates, LLC; Lazy Daze KLA, LLC; Whispering Pines Mobile Home Park, Ltd.,
and R&H Paul, Inc.,
Appellees

From the 36th Judicial District Court, McMullen County, Texas
Trial Court No. M-17-0008-CV-C, Consolidated M-17-0034-CV-B
Honorable Janna K. Whatley, Judge Presiding

Opinion by:   H. Todd McCray, Justice

Sitting:[1]      Rebeca C. Martinez, Chief Justice[2]
              Adrian A. Spears II, Justice
              H. Todd McCray, Justice

Delivered and Filed: March 18, 2026

REVERSED AND RENDERED AND REMANDED

---

[1] The original panel in this appeal was Chief Justice Rebeca C. Martinez, Justice Patricia O. Alvarez, and Justice Liza A. Rodriguez. On remand, Justice Adrian A. Spears and Justice H. Todd McCray have been assigned pursuant to Rule 9(k)(iii) of this court's Internal Operating Procedures for the Handling of Cases.

[2] Chief Justice Rebeca C. Martinez concurs in judgment only.

In this oil and gas deed construction case, the parties dispute whether the deed reserved a fixed or floating nonparticipating royalty interest. The trial court construed the deed as reserving a fixed 3/32 interest. We reverse the trial court's judgment in its entirety, render judgment that the deed conveyed a floating 3/4 interest, and remand this cause for a determination of any costs and attorney's fees.

## BACKGROUND

In a deed executed September 6, 1956 (the "1956 Deed"), Peter Hoffman and his wife Marion B. Hoffman conveyed to Graves Peeler a 1,070-acre tract but reserved a royalty interest for themselves. We will refer to the current owners of that interest as the Hoffmans, and the current owners of the remaining interests conveyed as the Peelers.

"A royalty interest is defined under well-established oil and gas law as the right to receive a share of gross production of the minerals produced under a mineral lease, free of the costs of production." *Graham v. Prochaska*, 429 S.W.3d 650, 656 (Tex. App.—San Antonio 2013, pet. denied) (citing *Delta Drilling Co. v. Simmons*, 161 Tex. 122, 338 S.W.2d 143, 147 (1960)). "The basic royalty interest, or 'landowner's royalty,' is the fraction of production, free of the costs of production, which a landowner-lessor is entitled to receive from the operator-lessee under the terms of his lease." *Graham*, 429 S.W.3d at 656 (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996)).

After a dispute arose over the proper allocation of royalties on oil and gas production under a lease, the lessee filed a petition in interpleader. The Hoffmans then sought a declaratory judgment to construe the deed, and the Peelers answered. In competing motions for summary judgment, the Hoffmans argued the 1956 Deed reserved an undivided 3/4 floating royalty interest in oil, gas, and other minerals produced from the property, while the Peelers argued the Hoffmans reserved a fixed

3/32 royalty interest.[3] The trial court considered the motions and responses, and granted partial summary judgment for the Peelers, which effectively denied the Hoffmans' motion. In its final judgment, the trial court decreed that the 1956 Deed reserved "a fixed 3/32 nonparticipating royalty interest."

The Hoffmans appealed, arguing that they, not the Peelers, were entitled to judgment as a matter of law. We agreed, concluding the reservation under the 1956 Deed was a floating 3/4 interest and, therefore, the trial court erred when it construed the reservation as a fixed royalty interest. *Hoffman v. Thomson*, 630 S.W.3d 427, 436 (Tex. App.—San Antonio 2021), *vacated sub nom.*, *Thomson v. Hoffman*, 674 S.W.3d 927 (Tex. 2023).

After we issued our opinion and judgment in this matter, appellees filed a petition for review. Subsequently, the supreme court heard and decided another double fraction case, *Van Dyke v. Navigator Group*, 668 S.W.3d 353 (Tex. 2023) (issued Feb. 17, 2023), which established a new approach to interpreting double fraction deeds.

On September 1, 2023, the supreme court issued its opinion and judgment in this case. *Thomson v. Hoffman*, 674 S.W.3d 927 (Tex. 2023) (per curiam). It noted, "[t]he analytical framework introduced in *Van Dyke* . . . presents a new legal formulation" which this court has not had the opportunity to consider. *Id.* at 928–29 (citing *Van Dyke*, 668 S.W.3d at 364). It then concluded "that the most prudent course is for the court of appeals to apply *Van Dyke* to this record in the first instance." *Id*. at 929. It then vacated our judgment and remanded the cause to this court. *Id*.

---

[3] *See U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 152 (Tex. 2018) ("A fractional royalty interest is referred to as a fixed royalty because it "remains constant" and is untethered to the royalty amount in a particular oil and gas lease. A fraction of royalty interest is referred to as a floating royalty because it varies depending on the royalty in the oil and gas lease in effect and is calculated by multiplying the fraction in the royalty reservation by the royalty in the lease.") (citations omitted); *see also Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016) (differentiating fractional (fixed) and fraction of (floating) royalties).

**STANDARD OF REVIEW**

A trial court may render summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues [presented]." TEX. R. CIV. P. 166a(c); *accord Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). We review a trial court's summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Id*. at 248.

### *Applicable Law*

Whether an oil and gas deed is ambiguous is a question of law for the court. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). "The construction of an unambiguous deed is [also] a question of law for the court." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)).

In constructing a deed, we must take "a holistic approach aimed at ascertaining intent from all words and all parts of the deed." *Laborde*, 551 S.W.3d at 151. "We harmonize all parts of the deed, understanding that the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Graham*, 429 S.W.3d at 655 (citing *Luckel,* 819 S.W.2d at 462). "If different parts of the deed appear contradictory or inconsistent, we strive to harmonize all of the parts and construe the instrument to give effect to all of its provisions." *Id.*

"One fundamental premise, however, is that a text retains the same meaning today that it had when it was drafted. *Van Dyke*, 668 S.W.3d at 359. Accordingly, "[w]ords must be given the meaning they had when the text was adopted." *Hysaw*, 483 S.W.3d at 13 (quoting Antonin Scalia

& Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012)); *see also Van Dyke*, 668 S.W.3d at 359-60 ("Thus, the ordinary meaning at the time of drafting remains the meaning to which courts must later adhere."). "The meaning of an unamended text, in other words, is unaffected by the passage of time, linguistic developments, or the evolution of usage." *Van Dyke*, 668 S.W.3d at 360.

### The *Van Dyke* Presumption

It is well established that, the term one-eighth, when viewed against a historical backdrop, was widely used as a term of art in deeds to refer to the total mineral estate or as a standard royalty and "did not typically bear its arithmetical meaning." *Id*. at 362 (citing *Hysaw*, 483 S.W.3d at 8);[4] *see also Karli v. Wilson*, No. 08-24-00065-CV, 2025 WL 3039609, at *13 (Tex. App.—El Paso Oct. 30, 2025, pet. filed) ("The same implication was applied where the deed did not expressly mention "1/8" but the restated fraction was a multiple of 1/8.") (citing *Laborde*, 551 S.W.3d at 153).

It was not uncommon during that era for a lease to describe a floating royalty in terms of a double fraction, that is, a certain fraction of the usual 1/8th royalty. *Graham*, 429 S.W.3d at 657; *see also Hysaw*, 483 S.W.3d at 9 ("Instruments employing double fractions to convey or reserve mineral interests almost invariably involve multiples of 1/8, a royalty rate so pervasive that, for decades, courts took judicial notice of it as the standard and customary royalty."); *Concord*, 966 S.W.2d at 459–60 ("We have seen that when mineral or royalty deeds contain differing fractions, *the fractions almost invariably involve a multiple of eight*.") (emphasis added). Given the

---

[4] As this historical and legal background has been repeatedly explained in other opinions and articles, we see no reason to duplicate those efforts. *See*, *e.g.*, *Van Dyke*, 668 S.W.3d at 362-64; *Hysaw*, 483 S.W.3d at 8-12; *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 454-57 (Tex. 1998); *Graham v. Prochaska*, 429 S.W.3d at 657, 670; Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One-Eighth Royalty and Other Stories*, 33 ST. MARY'S L.J. 1, 14 (2001); 2 Howard R. Williams & Charles J. Meyers, *Construction of fractional interests: Fraction of royalty*, Oil and Gas Law § 327.2, at 89-94.2 (Patrick H. Martin & Bruce M. Kramer eds., 2014).

prevalence of these phenomena, the *Hysaw* Court recognized "the reality is that use of 1/8 (or a multiple of 1/8) in some instruments undoubtedly embodies the parties' expectation that a future lease will provide the typical 1/8th landowners' royalty with no intent to convey a fixed fraction of gross production." 483 S.W.3d at 10. In each of these cases, the double fractions were interpreted to provide a floating fraction of royalty.

In *Van Dyke*, The Supreme Court of Texas held that any reference to 1/8 in a multiple-fraction deed is presumed to serve as shorthand for the lessor's entire interest, which was typically subject to an existing or anticipated lease with a 1/8 royalty. 668 S.W.3d at 359. The Court then took that conclusion one step further and instructed that when confronting a reservation of interest with a double fraction involving 1/8th, a court must "begin with a presumption that the mere use of such a double fraction was purposeful and that 1/8th reflects the *entire* mineral estate, not just 1/8th of it." *Id.*, at 364. Accordingly, the use of the term 1/8 in a double fraction scenario is to be regarded as a term of art *unless* the text or structure of the instrument rebuts the presumption, thus requiring that 1/8 be given its arithmetical meaning instead. *Id.*, at 364–65.

The reasoning behind this presumption is twofold. *See Van Dyke*, 668 S.W.3d at 363. First, there is the estate misconception theory. The estate misconception theory refers to prevalent, mistaken belief that a lessor receiving a 1/8 royalty only retained "a 1/8 interest in the minerals, rather than the *entire* mineral estate in fee simple determinable with the possibility of reverter of the entire estate." *Id.* This usage of 1/8 to refer to a landowner's entire mineral estate "ran rampant in instruments of this time," has been recognized by Texas courts, and has even been called "patent evidence that the parties were functioning under the estate misconception." *Id.* (citing Laura H. Burney, *The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed Construction*, 34 S. TEX. L. REV. 73, 90 (1993)).

Second, confusion also abounded around the prevalent belief that a landowner's royalty would always be 1/8. *Van Dyke*, 668 S.W.3d at 363. Landowners would thus use 1/8 "as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value." *Id.* And again, this belief was so pervasive that the Supreme Court of Texas took judicial notice of the misunderstanding, *specifically in the context of double-fraction royalties*. *Id.* (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957)).

The presumption is "readily and genuinely rebuttable." *Van Dyke*, 668 S.W.3d at 359. However, "the rebuttal must come from the document itself, given the public's right to rely on the meaning of deeds and our general insistence on predictability and stability in matters of interpretation." *Id.*, at 364. Accordingly, "the entire instrument should be examined to determine whether its text rebuts the presumption." *Id.* The court explained the presumption could be rebutted by (1) express language, (2) distinct provisions that could not be harmonized if 1/8 is given the term-of-art usage, or (3) the repeated use of fractions other than 1/8 in ways that reflect that the arithmetical expression was meant to represent all fractions in the instrument. *Id.* However, that Court also noted that "[f]requently, of course, examining the entire instrument will reveal provisions that confirm the presumption" and that "those additional provisions would make sense only if 1/8 is read as a term of art . . . ." *Id.*

## ANALYSIS

As is often the case, the parties here agree that the deed in question is unambiguous but diverge on its proper interpretation. Their disagreement is limited to whether the royalty interest the Hoffmans reserved in the 1956 Deed is a fixed 3/32 royalty interest or a floating 3/4 interest. We conclude the 1956 Deed reserved an undivided 3/4 floating royalty interest in oil, gas, and other minerals produced from the property.

A. The *Van Dyke* presumption applies.

Appellees assert the *Van Dyke* presumption should not apply because: 1) *Van Dyke* "reserved a fraction of the entire mineral estate" while this case is concerned with a reservation of a royalty interest; 2) the deed at issue was signed decades after the era in which the term one-eighth was used as a term of art; and 3) the reservation also includes the single fraction "3/32" and the Van Dyke presumption applies to double fractions containing 1/8. We disagree with each contention.

1. The presumption applies to mineral estates and royalty interests.

We find nothing in the text of *Van Dyke* that would preclude applying its presumption to royalty interests and note that the Court has previously established there is no material difference between the conveyance of a mineral interest or a royalty interest. *Luckel*, 819 S.W.2d at 463-64. *See also Powder River Mineral Partners, LLC v. Cimarex Energy Co.*, No. 08-23-00058-CV, 2023 WL 8703418, at *6 (Tex. App.—El Paso Dec. 15, 2023, pet. denied) (mem. op.) (rejecting an attempt to distinguish *Van Dyke*'s "conveyance of the minerals with a reservation of the royalty interest at issue" with "a conveyance of the royalty interest") (citing *Luckel*, 819 S.W.2d at 464).

As noted above, the *Van Dyke* presumption was established to address interpretive complications arising from "two widespread and related faulty conceptual culprits referenced in *Hysaw*—the estate-misconception theory *and the use of 1/8 as the standard royalty*—that worked in tandem to lead parties to use the term "1/8" to describe something other than a literal eighth." *Van Dyke*, 668 S.W.3d at 363 (emphasis added).

> The second rationale—the special meaning that 1/8 acquired in the standard-royalty context—provides an additional objective indication of what parties meant by using 1/8 within a double fraction. We said in *Hysaw* that we had "no doubt" that "[t]he near ubiquitous nature of the 1/8 royalty—dubbed by some as 'the legacy of the 1/8 royalty' or 'historical standardization' "—is something that "influenced the language used to describe the quantum of royalty in conveyances of a certain

vintage." . . . Therefore, parties would use the term 1/8 as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value. Once again, this pervasive misunderstanding long ago led us to take judicial notice in this specific context of double-fraction royalties.

*Id.*, at 363. It would be nonsensical to recognize that the 1/8 fraction has resulted from both the estate-misconception theory and royalty standardization and then fashion a remedy that only addresses one of them.

Further, the analysis in *Van Dyke* is expressly based on the court's reasoning in *Hysaw*—which interpreted the use of a double fraction to convey royalty interests.[5] *Id.,* at 362 ("*Hysaw* provides the foundation for resolving this case and many others."). Not only did *Van Dyke* rely upon *Hysaw*, in reaffirming the earlier decision the Court explained that *Hysaw*—a royalty interest case—requires the presumption applies whenever "courts confront a double fraction involving 1/8 in an instrument." *Id.*, at 364.

We believe this is a clear indication that the Court intended for the presumption to be applied when interpreting either mineral interests or royalty interests when the expression of that interest contains the term "1/8" in a double fraction. Accordingly, we conclude the nature of the interest reserved by the Hoffmans does not preclude the application of the *Van Dyke* presumption.

2.  The presumption is not limited to archaic instruments.

Appellees assert the presumption should not apply to the 1956 Deed because it is considerably more recent than the 1924 deed in *Van Dyke*. But Texas case law is replete with examples addressing the estate-misconception theory and/or the use of 1/8 as the standard royalty, when interpreting instruments of similar vintage as the 1956 Deed at issue here.[6] *See also Garrett*,

---

[5] *See Hysaw*, 483 S.W.3d at 15 ("The only plausible construction supported by a holistic reading of the will is that Ethel used 'one-eighth royalty' as shorthand for the entire royalty interest a lessor could retain under a mineral lease[.]").

[6] *See*, *e.g.*, *Laborde*, 551 S.W.3d at 152 (interpreting a reservation in a 1951 instrument and recognizing that "[t]he ubiquity of the 1/8 landowner royalty led many landowners to presume that the landowner royalty would remain 1/8

299 S.W.2d at 907 ("The court takes judicial knowledge of the fact that the usual royalty provided in mineral leases is one-eighth."). Further, there is nothing in the text of *Van Dyke* that limits the application of the presumption to instruments of a certain era. Accordingly, we determine that we are not precluded from applying the presumption to the 1956 Deed. *See Montgomery, Tr. of Tri-Mont Irrevocable Trusts v. ES3 Minerals, LLC*, 697 S.W.3d 397, 404 (Tex. App.—El Paso 2024, no pet.) (applying the *Van Dyke* presumption to a 1955 deed).

       3.  <u>The presence of a third fraction does not preclude applying the presumption.</u>

Last, appellees assert the presumption should not apply because of the presence and repeated use of the fraction 3/32 to describe the Hoffmans' royalty interest. But, if the 1956 Deed contains a double fraction involving 1/8, we are required to begin our analysis with the rebuttable presumption. *Van Dyke*, 668 S.W.3d at 364 ("[W]hen courts confront a double fraction involving 1/8 in an instrument, the logic of our analysis in Hysaw requires that we begin with [the] presumption[.]"). The presence of this additional fraction does not permit us to overlook the double fraction that triggered the presumption in the first place. Accordingly, we determine that appellees' arguments regarding the fraction 3/32 are best considered as textual challenges to the presumption.

       4.  <u>The presumption applies because the 1956 Deed contains a double fraction involving 1/8.</u>

Turning to the reservation at issue here, we find that the *Van Dyke* presumption applies. The conveyance language in the first paragraph reads as follows:

> [T]here is hereby expressly reserved ... an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty) in and to all of the oil, gas and other minerals....

---

in perpetuity."); *Bridges v. Uhl*, 663 S.W.3d 252, 263 (Tex. App.—El Paso 2022, no pet.) (interpreting a 1940 deed and discussing "the legacy of the 1/8th royalty"); *Graham*, 429 S.W.3d at 657 (interpreting 1950 deed and noting that "[i]n the 1920s and 1930s, the landowner's royalty became standardized at one-eighth of production."); *Medina Interests, Ltd. v. Trial*, 469 S.W.3d 619, 625 (Tex. App.—San Antonio 2015, pet. denied) (interpreting a 1949 deed and determining "the use of the fraction 1/8 'reflects the common misconception of that period that the landowner's royalty would always be one-eighth of production obtained under a lease.'") (citation omitted).

The first half of the clause identifies a specific fraction, three thirty-second's while the second portion contains a double fraction involving one-eighth (3/4th of the usual 1/8th). This double fraction requires us to begin with a rebuttable presumption that the 1/8 in this context was not an arithmetical value but was used as a placeholder for the standard royalty. *See Van Dyke*, 668 S.W.3d at 363–64.

Accordingly, "three-fourths (3/4's) of the usual one-eighth (1/8th) royalty" is initially read as "three-fourths (3/4's) of the 'standard royalty'"—thereby reserving a 3/4 floating interest for the Hoffmans. 7*See Montgomery*, 697 S.W.3d at 403 ("The *Van Dyke* presumption, treating 1/8 as serving as a placeholder for future royalties generally, is a presumption of a floating royalty interest.") (citing *Van Dyke*, 668 S.W.3d at 365–66; *Hysaw*, 483 S.W.3d at 12–13, 16.).

But this presumption is rebuttable and, therefore, we must examine whether the text of the deed rebuts this presumption that one-eighth (1/8th) represents a placeholder for the landowner's royalty, rather than a fixed value. *See Hysaw*, 483 S.W.3d at 16 ("Intent must be determined by a careful and detailed examination of the document in its entirety, rather than by application of mechanical rules of construction that offer certainty at the expense of effectuating intent."); *Laborde*, 551 S.W.3d at 151 (requiring a holistic approach in ascertaining intent from the language of the deed). With that understanding in mind, we examine the two paragraphs that describe the reserved interest, with particular focus on the three clauses that expressly address the reserved interest.

B.  Interpreting the reservation.

The 1956 Deed begins by identifying the grantors, the grantee, the consideration, and the description of the property being conveyed. After it conveys the surface and mineral estates, the deed contains these two paragraphs:

SAVE AND EXCEPT HOWEVER, and there is hereby expressly reserved and retained unto the grantor, Peter Hoffman, herein, his heirs or assigns, an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty) in and to all of the oil, gas and other minerals, in to and under or that may be produced from the land herein conveyed, the same to be paid or delivered unto the grantor herein, his heirs or assigns, as his own property free of cost from royalty oil, gas and/or other minerals, together with the right of ingress or egress at all times for the purpose of storing, treating, marketing and removing the same therefrom. Said interest in and to said oil, gas and/or other minerals hereby reserved is a nonparticipating royalty interest, and the grantors herein, their heirs or assigns shall not participate in the bonus paid for any future oil, gas and/or mineral lease covering said land, nor shall they participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any future lease covering said land, nor shall it be necessary for the grantors herein, their heirs or assigns to join in the execution of any future oil, gas or mineral lease covering said land.

PROVIDED HOWEVER, that in the event oil, gas and/or other minerals are produced from said land then the grantor herein, Peter Hoffman, his heirs or assigns shall receive a full three thirty-second's (3/32's) portion thereof as his own property, to be paid or delivered to him, free and clear of all operating and development costs; and it is the intention of the grantors and grantee that the grantor, Peter Hoffman, shall own and be entitled to receive three thirty-second's (3/32's) of the gross production of all oil, gas and other minerals produced and saved from the properties hereinbefore described.

Both parties assert that these paragraphs determine the royalty interest the Hoffmans reserved. Having reviewed the entire deed, we agree that no other paragraphs shed light on the parties' intent with respect to the reservation.

1.  The language "the usual one-eighth (1/8th) royalty" supports the presumption.

The first paragraph contains the following clause which states the reservation of the Hoffman's royalty:

[T]here is hereby expressly reserved . . . an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty) in and to all of the oil, gas and other minerals[.]

The language in the second half of the first clause—the "same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty"—supports the presumption that 1/8 represents the landowner's

royalty, not a fixed value. We note that the presumption applies because of the presence of 1/8 in a double fraction, absent any other words or context. *See Van Dyke*, 668 S.W.3d at 364 ("[A] double fraction involving 1/8 in an instrument . . . requires that we begin with a presumption[.]"). Here, however, we are confronted with more than just the double fraction.

Specifically, the clause refers to the 1/8th royalty as "the usual royalty." As noted by this court before, the phrase "one-half of the usual 1/8 royalty" is an example of language that creates a floating royalty. *See Medina*, 469 S.W.3d at 623 (Tex. App.—San Antonio 2015, pet. denied) (citing 2 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law*, § 327.2, at 84 (2014); *Leal v. Cuanto Antes Mejor LLC*, No. 04-14-00694-CV, 2015 WL 3999034, at *3 (Tex. App.—San Antonio July 1, 2015, no pet.) (mem. op.) (same); *see also Graham*, 429 S.W.3d at 659 (Tex. App.—San Antonio 2013, pet. denied) (holding that "***the*** one-eighth royalty" denotes a distinct or particular royalty—the landowner's royalty) (emphasis added). Our sister courts have— in both pre- and post-*Van Dyke* opinions—reached similar conclusions.[7]

---

[7] *See*, *e.g.*, *Montgomery*, 697 S.W.3d at 404–05 (recognizing that "the usual 1/8 royalty" can stand as a proxy for the landowner's royalty and supports the presumption of an intended floating interest); *Boren Descendants & Royalty Owners v. Fasken Oil & Ranch, Ltd.*, 703 S.W.3d 874, 885 (Tex. App.—Eastland 2024, pet. filed) ("We have previously held that double-fraction language that describes "the usual 1/8 royalty" can, under appropriate circumstances, create a floating interest. We see no reason why such language cannot be similarly applied in this case, particularly in light of the supreme court's holding in *Van Dyke*[.]") (citations omitted); *Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC,* No. 08-22-00108-CV, 2023 WL 2533169, at *4 (Tex. App.—El Paso Mar. 15, 2023, pet. denied) ("[T]the specific reference to the landowner's royalty and the use of "the usual 1/8th royalty" guide us to a determination this language supports and does not rebut the presumption the deed reserved a floating 1/4th interest."); *Uhl*, 663 S.W.3d at 265 (concluding reference to the "usual one-eighth (1/8) royalty" supported finding a reservation of a floating royalty interest); *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 495–96 (Tex. App.—Fort Worth 2008, pet. denied) (holding that "being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty" established a floating fraction of royalty and not a fixed fractional royalty); *Coghill v. Griffith*, 358 S.W.3d 834, 839 (Tex. App.—Tyler 2012, pet. denied) ("[R]eferences, whether express or implied, to the usual one-eighth royalty do not lead to the conclusion that they intended to limit the grantor's reservation to a fixed . . . royalty interest."); *Butler v. Horton*, 447 S.W.3d 514, 519 (Tex. App.—Eastland 2014, no pet.) (holding a floating royalty was created when grantor reserved "one-half of the usual 1/8th royalty"); *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 510, 512 (Tex. App.–Fort Worth 2011, pet. denied) (deed describing the reservation as "one half of the usual one eighth royalty [sic]" reserved 1/2 of royalties, not fixed 1/16 royalty).

While we do not go so far as to say that this language is dispositive here—as we must continue to examine the entirety of the text—we determine it supports and does not rebut the *Van Dyke* presumption that 1/8 represents the landowner's royalty, not a fixed value, and that the deed therefore reserved a floating 3/4 royalty interest.

2. <u>The presence of the fraction 3/32 does not rebut the presumption.</u>

Appellees assert that the repeated use of the fraction three thirty-second's (3/32's), including in the initial clause which explicitly reserves the Hoffmans' royalty interest, rebuts the presumption. *See Van Dyke*, 668 S.W.3d at 364 (explaining that "the repeated use of fractions other than 1/8 in ways that reflect that an arithmetical expression" may be used to rebut the presumption). We disagree.

This fraction is found in the following three clauses:

[T]here is hereby expressly reserved . . . an undivided three thirty-second's (3/32's) interest (same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty) in and to all of the oil, gas and other minerals[.]

Hoffman . . . shall receive a full three thirty-second's (3/32's) portion thereof as his own property[.]

Hoffman, shall own and be entitled to receive three thirty-second's (3/32's) of the gross production of all oil, gas and other minerals produced and saved[.]

Neither the second nor the third clause contain the double fraction present in the first clause, nor do they define the reserved interest as a floating percentage. To the contrary, if read in isolation from the entire first clause, the second and third clauses could indicate an intent to reserve a fixed interest. *See Garrett*, 299 S.W.2d at 906 (recognizing that a single fraction, if considered in isolation, would indicate a fixed interest). And if one simply ignores the "same being three-fourths (3/4's) of the usual one-eighth (1/8th) royalty" language from the first clause, then the three instances of 3/32 would be consistent and indicate an intent to reserve a fixed interest. But to give

full effect to all the language in the first clause, we must read the "undivided three thirty-seconds (3/32's) interest" together with its succeeding definition: the "same being three-fourths (3/4's) of the usual one-eighth (1/8) royalty."

Appellees' assert that this formulation clearly represents a straightforward mathematical application where calculation behind the 3/32's reservation is provided in an explanatory parenthetical. But the Court has "expressly rejected 'a mechanical approach requiring rote multiplication of double fractions whenever they exist.'" *Van Dyke*, 668 S.W.3d at 362 (quoting *Hysaw*, 483 S.W.3d at 4).

Additionally, we disagree that the relevance of the double fraction is decreased to the point where we may ignore it, simply because it is contained in a parenthetical. Granted, there is some support for such an approach. In *Laborde*, the Court was faced with a reservation clause that contained two different fractions.

> There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, *an undivided one-half (1/2) interest* in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, *the same being equal to one-sixteenth (1/16) of the production.*

*Laborde*, 551 S.W.3d at 150. In determining the rights reserved under this clause, the Court noted that the structure of the reservation clause supported finding that the second half of the clause was merely explanatory.

> We note that "the same being equal to one-sixteenth (1/16) of the production" is offset by a comma, indicating a nonrestrictive dependent clause. Such a clause "gives additional description or information that is incidental to the central meaning of the sentence" and "that could be taken out of the sentence without changing its essential meaning."

*Id*., at 150 (quoting Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.6(a), at 6 (3d ed. 2013)). However, the Court only addressed this structure *after* determining the first clause reserved

a floating interest and "consistent with our rule of construction mandating that no language be rendered meaningless" this second clause cannot modify the plain meaning of the first clause. *Id*., at 153. Even after analyzing the second clause the Court cautioned that it was not implying "that the use of a single comma is the dispositive consideration here. We simply recognize that the sentence's grammatical structure is consistent with the interpretation that gives effect to all of its parts." *Id*., at 154.

More recently, the El Paso Court of Appeals addressed the following clause—containing a double fraction followed by a parenthetical—which reserved an "undivided 1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest)[.]" *Royalty Asset*, 2023 WL 2533169, at *1. As in *Laborde*, the court determined that under grammatical rules, the single fraction parenthetical was a non-essential explanation of the double fraction it followed. *Id*., at *1. However, once again, this interpretation was applied after determining that the first half of the clause reserved a floating 1/4th royalty interest.

In other words, in both *Laborde* and *Royalty Asset*, the "secondary" portion of the reservation did not change the clear meaning found in the first half of the clause establishing a floating royalty. Moreover, in both decisions, none of the language was rendered meaningless.

But here, the presence of the fraction 3/32 in the first half of the reservation clause here does not clearly establish a fixed royalty. As noted in *Hysaw*, "the reality is that use of 1/8 (*or a multiple of 1/8*) in some instruments undoubtedly embodies the parties' expectation that a future lease will provide the typical 1/8th landowners' royalty with no intent to convey a fixed fraction of gross production." 483 S.W.3d at 11 (emphasis added); *see also Coates Energy Tr. v. Frost Nat. Bank*, No. 04-11-00838-CV, 2012 WL 5984693, at *7 (Tex. App.—San Antonio Nov. 28, 2012, pet. denied) (mem. op.) (noting cases where smaller fractions referencing royalties that are

multiples of 1/8 "do not create a fixed royalty of that size, but simply recognize what the royalty would be under a future lease providing for the typical l/8th royalty.").

Again, the fact that 3/32 is a multiple of 1/8 is not dispositive that a floating royalty was intended. But to ascertain the parties' intent, we cannot simply pretend the "same being three-fourths . . . of the usual one-eighth . . . royalty" language does not exist. *See Wenske*, 521 S.W.3d at 794 ("When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed.") (emphasis added).

Even before *Van Dyke*, the Court recognized that a fixed fraction in a granting clause could be clarified by additional language in the instrument.

> Had other language in the deed not disclosed what the parties understood 'one sixty-fourth' to mean, it would be our duty to give those words their usual meaning and construe the deed as a mineral deed to an undivided one sixty-fourth of the minerals in place. But there follows the granting clause language which clearly defines what the parties understood 'one sixty-fourth' of the minerals to mean. . . . Construing all of these provisions together it is made certain that what the parties intended to convey, had there been production under the then existing lease, was a royalty of one sixty-fourth or one-eighth of the one-eighth royalty retained in the lease.

*Garrett*, 299 S.W.2d at 906. More recently, the El Paso Court of Appeals recognized that "when a multiple of 1/8 (such as 1/32) appears in the initial clause that describes the interest and reappears as a double fraction in a subsequent clause (1/4 of 1/8)" a variation of the presumption occurs. *Karli*, 2025 WL 3039609, at *4 (citing *Concord*, 966 S.W.2d at 460).

Accordingly, we cannot interpret the fraction 3/32 in a vacuum. Nor can we explain away this parenthetical as simple multiplication, as this mechanical approach "fails to accord any significance to the use of double fractions in lieu of a single fraction" or to "phrases such as 'the usual 1/8 royalty.'" *Hysaw*, 483 S.W.3d at 12. To do so would be to undermine the reasoning behind the presumption. *Van Dyke.*, 668 S.W.3d at 362.

We therefore conclude the use of the fraction 3/32, followed by an explanatory parenthetical with a double fraction, does not rebut the *Van Dyke* presumption. While the fraction 3/32 is repeated two more times (without the parenthetical), we do not find that these instances could rebut the presumption either, absent a determination that the parenthetical in the first clause is simple math—something we have already concluded is not possible. *Van Dyke* instructs that to rebut the presumption, the remainder of the instrument must be "sufficiently clear that, as a matter of law, the double fraction can only be held to require simple multiplication." 668 S.W.3d at 365. The two additional instances of "3/32" in the 1956 Deed do not accomplish this.

3. The existing 1/10 royalty on other minerals does not rebut the presumption.

Appellees also assert that, because the 1956 Deed conveyed land that was already subject to an existing lease with a 1/10 royalty on "other minerals," the original parties could not have been operating under the misconception that royalties would always be 1/8. This contention, however, misconstrues the nature of the presumption *and* how it may be rebutted.

*Van Dyke* is clear that the presumption is to be applied because the estate-misconception theory and the use of 1/8 as the standard royalty "worked in tandem to lead parties to use the term "1/8" to describe something other than a literal eighth." *Van Dyke*, 668 S.W.3d at 363. But, because both "faulty" concepts led to this non-mathematical usage, the Court also acknowledged "it matters less *why* the term was used in a particular way than *that* it was so widely used[.]" *Id.* In other words, *Van Dyke* applies the presumption to account for how the term 1/8 was used historically, without regard for the alleged actual or constructive knowledge, or the subjective intent, of the original parties. Once the presumption applies, it may only be rebutted by the objective intent of the parties as revealed in the instrument. *See Laborde*, 551 S.W.3d at 151 (requiring a holistic approach in ascertaining intent from the language of the deed); *Wenske*, 521 S.W.3d at 794 ("When

construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed.").

"Said differently, using extrinsic evidence of subjective intent to inform the language that the specific parties used would impermissibly trespass beyond the document's four corners." *Id.*, at 361-62. Instead, "there must be some textually demonstrable basis to rebut the presumption" within the language of the instrument itself. *Id.*, at 364-65. No such basis is found here.[8]

4. <u>The non-reservation of any future bonus does not rebut the presumption.</u>

Appellees contend that language in the 1956 Deed stating that grantors "shall not participate in the bonus paid for any future oil, gas and/or mineral lease covering said land," weighs against finding a 3/4 floating royalty. We disagree.

Appellees' argument hangs on the claim that the term "bonus" could include an amount of royalty higher than 1/8, and that by foregoing the rights to that bonus, grantors were agreeing to not participate in any royalty increase. The Supreme Court has recognized that the broadest definition of the term "bonus" could include a share of production reserved in a lease in excess of the usual 1/8th. *See Griffith v. Taylor*, 291 S.W.2d 673, 676 (1956). However, even if we were to apply this definition to the term "bonus," the breadth of this definition would preclude finding a specific intent by the parties clear enough to rebut the *Van Dyke* presumption.

Moreover, in *Griffith*, the Court noted that, when used in its broadest sense, "royalty" would also include "a sum certain to be paid out of production, although 'bonus' in that it is consideration in addition to the usual 1/8th royalty." *Id.* In noting the overlapping meaning of the

---

[8] While the 1956 Deed is made subject to the preexisting lease, the terms of that lease are not incorporated into the 1956 Deed. But, even if they were, there is nothing in those terms that expressly rebuts the presumption that the language "three-fourths (3/4's) of the usual one-eighth (1/8th)" in the reservation provision of the 1956 Deed meant that the Hoffmans reserved a fixed 3/4 royalty interest that would apply to the 1/8 royalty on oil and gas and the 1/10 royalty on "other minerals" established under the lease.

words "bonus" and "royalty" when used in their broadest sense, the Court explained that "when it is necessary that they be distinguished *there is a narrower concept of the two terms as they are ordinarily and commonly used and understood in the oil and gas industry* in which they do not conflict but are harmonious." *Id*. (emphasis added). In other words, the generally accepted meanings of these words, which are narrower than the broadest sense of them, are what we use in a plain language construction of the instrument. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 497 (Tex. App.—San Antonio 2013, pet. denied) ("If a lease term has a generally accepted meaning in the oil and gas industry, we use its generally accepted meaning.") (citations omitted).

"In Texas oil and gas leases, the generally accepted meaning of bonus is the cash consideration paid or agreed to be paid for the execution of the lease." *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 497–98 (Tex. App.—San Antonio 2013, pet. denied) (cleaned up). Applying that narrower definition to "bonus" in the 1956 Deed, we conclude the relinquishment of the right to future bonus payments does not clearly rebut the *Van Dyke* presumption or affect the interpretation of the royalty interest reserved. *See also Boren*, 703 S.W.3d at 885–86 (rejecting argument that *Van Dyke* presumption was rebutted after concluding "the term "bonus," as used in the deed at issue, refers to any limited or one-time payments that might be due under the lease, as opposed to an ongoing "royalty," which would include the "usual 1/8th" or any other fraction that would become due as a percentage of production.")

## CONCLUSION

In summary, none of Appellees' arguments preclude applying the *Van Dyke* presumption to the 1956 Deed, and the remaining text of that instrument either supports or does not clearly rebut the presumption. We determine, then, that the text of the entire deed, read holistically, is capable of clear meaning, and, thus, it is unambiguous. The lack of any text within the four corners

of the deed that rebuts the presumption leads us to conclude that the grantors of the 1956 Deed did not use "three-fourths (3/4's) of the usual one-eighth (1/8th) royalty)" in its arithmetical sense but instead intended to reserve a floating three-fourths (3/4's) interest in nonparticipating royalties in general. Accordingly, we conclude the trial court erred when it construed the reservation as a fixed 3/32 royalty interest and awarded attorney's fees. We reverse the trial court's judgment in its entirety; render judgment that the 1956 Deed reserved a floating three-fourths (3/4's) nonparticipating royalty interest consisting of any royalty that may be reserved in any oil, gas, or mineral lease that may be executed; and remand this cause for the trial court to exercise its discretion in awarding costs and any reasonable and necessary attorney's fees.

H. Todd McCray, Justice